IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-03588-KAS

TREY FRANZOY, an individual;
PATRIOT CONTEST & GAMES, LLC, a Wyoming limited liability company; and
CHARLIE CHEDDA'S, LLC, a Wyoming limited liability company,

      Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado
Division of Gaming, Colorado Department of Revenue, and in his individual capacity;
MICHAEL PHIBBS, in his individual capacity;
DANIEL J. HARTMAN, in his individual capacity;
KIRSTEN GREGG, in her individual capacity;
CITY OF GRAND JUNCTION, COLORADO;
CITY OF PUEBLO, COLORADO; and
CITY OF COLORADO SPRINGS, COLORADO,

      Defendants.

---

**CITY OF PUEBLO, COLORADO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

---

    Defendant, City of Pueblo, Colorado ("Pueblo"), by and through its attorneys,

Lambdin & Chaney, LLP, files its reply in support if its motion to and states as follows:

### INTRODUCTION

    Plaintiffs' response does not cure the fundamental defects identified in the City of

Pueblo's Motion to Dismiss. Instead, Plaintiffs continue to rely on the same flawed premise

underlying the First Amended Complaint: that their gaming machines constitute lawful

contests of skill and therefore cannot be subject to municipal enforcement.

1

That premise rests on two incorrect assumptions. First, Plaintiffs repeatedly attempt to convert their legal theory, that their devices qualify as lawful contest of skill under Colorado law, into a factual allegation that must be accepted as true at the motion to dismiss stage. But courts evaluating motions under Rule 12(b)(6) accept only well-pleaded *factual allegations* as true, not legal conclusions or conclusory statements disguised as facts. See ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009).

Second, Plaintiffs' Response incorrectly suggests that Pueblo cannot enforce gambling prohibitions unless some state court or state regulatory body has first declared Plaintiffs' machines illegal. That is not the law. Colorado home-rule municipalities possess independent authority to enact and enforce ordinances governing local matters, including ordinances that mirror or incorporate existing state statutes. See ***Colo. Const. art XX, § 6***. Local governments routinely adopt ordinances paralleling state criminal laws and may enforce those ordinances without waiting for a statewide judicial determination regarding the legality of particular conduct.

Here, the City of Pueblo has every right to enact ordinances that grant it powers to prevent and prosecute illegal conduct within its city. The City of Pueblo does not need to wait for a state level ruling deeming certain activity illegal. If the City of Pueblo suspects illegal gambling is occurring within its borders, it may enforce ordinances that allow it to pursue and shut down any suspected and/or illegal activities. That is exactly what has happened in this case. Pueblo exercised its ordinary municipal authority by adopting an ordinance mirroring Colorado's gambling statutes and enforcing that ordinance through routine regulatory and law-enforcement mechanisms. Plaintiff's attempt to recast those

routine actions as violations of the First, Fourth, and Fourteenth Amendments. Once Plaintiffs' legal conclusions are set aside, the First Amended Complaint fails to plausibly plead any constitutional violation attributable to Pueblo.

Because Plaintiffs do not plausibly allege a protected property interest, do not identify protected speech regulated by Pueblo, and fail to establish municipal liability, the First Amended Complaint should be dismissed as to Pueblo.

## ARGUMENT

### A. Plaintiffs Misstate the Rule 12(b)(6) Standard and Improperly Attempt to Convert Legal Conclusions into Facts

Plaintiffs' Response begins with the assertion that this Court must accept as true that their devices operate as "bona fide contests of skill under C.R.S. § 18-10-102(2)(a)." Doc. 43, pg. 1. Plaintiffs argue that this conclusion must be accepted because it appears in the First Amended Complaint and is purportedly supported by a forensic analysis and a settlement agreement with a district attorney.

That argument misstates the governing pleading standard and improperly attempts to convert a legal conclusion into a presumed fact.

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept *well-pleaded <u>factual</u> allegations* as true. *See **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). However, courts are not required to treat legal conclusions or otherwise conclusory allegations as true. *Id.* As the Supreme Court has explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." ***Iqbal***, 556 U.S. at 678.

Plaintiffs attempt to circumvent this rule by relying on materials outside the complaint, specifically a privately commissioned report and settlement agreement, to argue that the Court must accept their machines as lawful contest of skill. However, neither document supports Plaintiffs' position.

First, Plaintiffs rely heavily on the report authored by consultant Nick Farley. See [ECF 25 ¶¶ 21-22, 35-36, 67, 91, 112.] However, that report was not issued by any governmental authority and was conducted at the request of Plaintiffs' counsel in separate litigation. See [ECF 36-9, p. 1.] The report therefore represents the opinion of **a privately retained consultant** rather than any regulatory or judicial determination regarding the legality of Plaintiffs' devices.

More importantly, the report itself repeatedly disclaims any legal authority regarding compliance with Colorado gambling statutes. The report expressly states that:

- "This document is not intended to express any opinion as to whether this system is authorized under any specific law." [ECF 36-9, p. 17.]

- "This document is not an approval letter or expression of any opinion as to whether this system should be approved." [ECF 36-9, p. 17.]

- "This document in no way warrants the operation of the system." [ECF 36-9, p. 17.]

Despite these explicit disclaimers, Plaintiffs attempt to use the report as if it constitutes legal authority requiring the devices be treated as lawful contests of skill under Colorado law. See [ECF 25 ¶¶ 2, 33, 35, 37, 52, 67, 92, 95, 124, 134.] It does not. No

governmental agency, regulatory body, or court has adopted the Farley report or relied upon it to determine that Plaintiffs' gaming machines are lawful.

Plaintiffs similarly rely on a settlement agreement with the District Attorney for Colorado's Twenty-First Judicial District. [ECF 25 ¶¶ 2, 22, 33, 43, 67, 91, 134.] But that agreement likewise fails to establish that Plaintiffs' machines are lawful and does not bind the City of Pueblo. [ECF 36-7, p. 1.] To the contrary, the agreement expressly recognizes that Plaintiffs bear the risk that their interpretation of the law may be incorrect. The agreement provides that Franzoy understand he is "taking the risk that the law is not what he thinks it is." [ECF 36-7, § 1.3, p. 2.] This agreement is limited to a particular prosecutorial office and does not purport to determine whether the machines comply with Colorado gambling statutes. See [ECF 36-7]

Nevertheless, Plaintiffs repeatedly assert that their machines must be treated as lawful contests of skill and argue that this Court must accept that conclusion as true at the pleading stage. That argument improperly attempts to convert Plaintiffs' legal theory into a presumed factual allegation.

Because the characterization of Plaintiffs' devices as "lawful contests of skill" is a legal conclusion, not a well-pleaded factual allegation, it is not entitled to the presumption of truth under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, the Court should disregard Plaintiffs' conclusory assertions regarding the legality of their machines when evaluating whether the First Amended Complaint plausibly states a claim for relief.

**B. Plaintiffs Allegations Rely Upon the Faulty Premise that if Their Machines are "Games of Skill" They Are Not Subject to Lawful Regulation.**

In addition to conclusory allegations that their machines constitute "games of skill," Plaintiffs allege in similarly conclusory fashion that if the machines are games of skill they are somehow no longer subject to regulation.  As discussed further in Section F, *infra,* Plaintiffs machines are subject to lawful regulation by the City of Pueblo even if they are not strictly gambling devices, and the City of Pueblo has broad authority to regulate conduct in establishments that serve liquor regardless of the nature of the machines.

In fact, C.R.S. § 18-10.5-103, bars use of even simulated gambling devices, as follows:

> (1) A person commits unlawful offering of a simulated gambling device if the person offers, facilitates, contracts for, or otherwise makes available to or for members of the public or members of an organization or club any simulated gambling device where:

> (a) The person receives, directly or indirectly, a payment or transfer of consideration in connection with an entrant's use of the simulated gambling device, admission to premises on which the simulated gambling device is located, or the purchase of any product or service associated with access to or use of the simulated gambling device, regardless of whether consideration in connection with such use, admission, or purchase is monetary or nonmonetary and regardless of whether it is paid or transferred before the simulated gambling device is used by an entrant; and

> (b) As a consequence of, in connection with, or after the play of the simulated gambling device, an award of a prize is expressly or implicitly made to a person using the device.

Colo. Rev. Stat. Ann. § 18-10.5-103 (West)

Based on the description of the devices set forth in the Farley Report [ECF 36-9] there can be no reasonable dispute that the machines in question offer an "award of prize"

whether expressly or implicitly.  There is no dispute that the machines accept money and offer the player a potential monetary award for playing.  Even if that did not meet the express definition of gambling as applied by any dictionary, as well as Colorado law under C.R.S. § 18-10-102 (which it decidedly does), it undoubtedly qualifies as unlawful simulated gambling under C.R.S. § 18-10.5-103.  It is further indisputable that use of the machines has a "purpose of gambling or gain other than amusement" which violates Pueblo Municipal Code Section 9-6-6.  Therefore, Plaintiffs conclusory allegations that these machines are somehow not subject to regulation if they are in some fashion "games of skill" is irrelevant.  They are still subject to lawful regulation.  Plaintiffs do not challenge the validity or constitutionality of C.R.S. §§ 18-10-102 or 18-10.5-103, or Pueblo Municipal Code Section 9-6-6.  Their allegations are only that the law, for reasons they never make clear, does not apply to them.

This Court should determine that the law does in fact apply to Plaintiffs just as it applies to all other citizens.  Whether under C.R.S. § 18-10-102 which defines gambling to include risking a thing of value for gain even "in part" upon chance, or under C.R.S. § 18-10.5-103 which defines simulated gambling, under Pueblo Municipal Code Section 9-6-6, or simply under the City of Pueblo's broad authority to regulate establishments that sell liquor, the machines at issue are subject to lawful regulation.  To grant dismissal of Plaintiffs Complaint, the Court need not parse fine definitions or decide factual issues regarding the exact nature of the machines at issue.  The Court need only find that the City of Pueblo has the right to enforce and apply the law within its home rule jurisdiction.  Because Pueblo's right to do so is beyond dispute, Plaintiff's Complaint should be dismissed with prejudice.

**C. Plaintiffs Still Lack Standing to Assert Claims Based on Alleged Injuries to Third-Party Host Organizations**

To the extent Plaintiffs' claims rely on alleged harms to host fraternal organizations, they fail because Plaintiffs cannot assert constitutional rights belonging to those non-parties.

As a general rule, a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The Supreme Court has recognized only limited exceptions to this rule, typically where enforcement of a statute directly regulates the plaintiff's conduct and the constitutional rights of third parties are inextricably bound up with the plaintiff's activity. See *People v. Rosburg*, 805 P.2d 432, 435 (Colo. 1991). In *People v. Rosburg*, the Colorado Supreme Court explained that vendor standing arises only where the challenged statutory scheme directly imposes legal duties on the vendor, forcing the vendor to choose between economic injury from compliance or sanctions from noncompliance. *People v. Rosburg*, 805 P.2d 432, 435 (Colo. 1991).

Here, Plaintiffs allege nothing more than ordinary business arrangements involving placement of gaming devices and revenue sharing with host organizations. Such commercial relationships do not create the type of constitutionally intertwined interests required for third-party standing. Nor do Plaintiffs plausibly allege that the fraternal organizations are hindered from asserting their own rights. Those organizations remain free to pursue administrative remedies, judicial review of licensing decisions, or independent constitutional claims. Additionally, as explained in the Motion to Dismiss, the third-party organizations have all been afforded their due process of the law. See Doc. 36.

Because Plaintiffs attempt to base their constitutional claims on alleged regulatory actions directed at non-party liquor licensees, and because they cannot satisfy the narrow requirements for third-party standing recognized by the Supreme Court and Colorado courts, any claims premised on injuries to those third parties must be dismissed.

## D. Pueblo Possess Independent Authority to Enact and Enforce Ordinances Mirroring State Law

Plaintiffs argue that their machines cannot be subject to municipal enforcement because "no court, agency, or regulatory body has ever adjudicated these devices illegal." Doc. 43, p. 1. This argument misunderstands the scope of municipal authority under Colorado law.

Colorado home-rule municipalities possess independent constitutional authority to enact and enforce ordinances governing local matters. **Colo. Const. art XX, § 6**. This authority includes the power to legislate and enforce ordinances addressing conduct that is also regulated by state law.

The Colorado Supreme Court has repeatedly recognized that local ordinances may coexist with state statutes addressing the same subject matter so long as the two do not conflict. *City of Longmont v. Colorado Oil & Gas Ass'n*, 369 P.3d 573, 579 (Colo. 2016). In matters of statewide or mixed concern, local regulation is permissible so long as it complements rather than contradicts state law. Thus, municipalities routinely enact ordinances that parallel state criminal statutes and enforce those ordinances through local regulatory and law-enforcement mechanisms. Nothing in Colorado law requires municipality to obtain a prior statewide judicial determination regarding the legality of particular conduct

before enforcing its own ordinance. The relevant inquiry in a preemption analysis is whether the local ordinance conflicts with state law, not whether another court has previously adjudicated the conduct unlawful. C*ity of Longmont v. Colorado Oil & Gas Ass'n*, 369 P.3d 573, 579 (Colo. 2016). Plaintiffs First Amended Complaint raises no concerns of conflicts of law in its First Amended Complaint. Plaintiffs attempt to raise questions of conflict in their Response, but considering such arguments is improper. The Court may only look as to the factual-allegations plead in the First Amended Complaint. F.R.C.P. 12(b)(6).

Here, Pueblo exercised its ordinary municipal authority in adopting an ordinance mirroring Colorado gambling statutes and enforcing that ordinance through routine regulatory and law enforcement. Plaintiffs cite no authority suggesting municipalities must wait for a judicial declaration of illegality before enforcing gambling laws. Additionally, plaintiffs state nothing more than conclusory statements that enforcement is directly targeted at them.

## E. Count II Fails Because Plaintiffs Were Not Deprived of a Protected Property Interest Without Due Process

Plaintiffs' due process theory continues to rest on the same flawed premise underlying their entire case: that their gaming machines must be treated as lawful under Colorado law simply because Plaintiffs say so. The First Amended Complaint repeatedly asserts that Plaintiffs' machines are "not illegal" and "lawful under Colorado law." See [ECF 25 ¶¶ 2, 22, 35, 67, and 91.]  As set forth above, these are conclusory legal assertions, not well pleaded facts, and they are not entitled to the presumption of truth at the motion to

dismiss stage. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009).  Plaintiffs continued reliance upon the Farley Report and/or the settlement agreement remains unavailing.

Further, Plaintiffs do not plausibly allege that Pueblo deprived them of due process. As to Pueblo, the FAC identifies cease-and-desist letters, licensing determinations involving third-party liquor licensees, and a search conducted pursuant to a judicially authorized warrant. [ECF ¶¶ 35-40, 72.] None of those allegations plausibly establishes a deprivation of Plaintiffs' property without due process. All actions done by Pueblo were done in a fashion where due process was afforded. See Doc. 36.

Cease-and-desist letters do not constitute a deprivation of due process. Police are permitted to notify businesses and individuals when suspected unlawful activity is occurring and to direct that such activity cease. Such communications are remedial notices, not adjudications, and they do not themselves deprive anyone of property.

The same is true of liquor licensing decisions. Local licensing authorities are permitted to deny, delay, condition, suspend, or revoke licenses where suspected unlawful activity is occurring on licensed premises. That is a routine function of the licensing framework, not a constitutional violation. And Pueblo's licensing framework itself provides the process that is constitutionally required. Applications, denials, suspensions, and revocations are governed by established procedures that include written decisions, public hearings, and opportunities for review and appeal. See [ECF 36-11] The Steel City proceedings demonstrate that these procedures were followed in practice. Due process requires notice and an opportunity to be heard, not a guarantee of a favorable outcome.

Further, the April 2025 enforcement action was carried out pursuant to a judicially authorized search warrant for suspected violations of gambling laws, not liquor licensing violations. See [ECF 36-8] That enforcement action was taken through neutral judicial process and underscores that no agreement or stipulation eliminated Pueblo's authority to investigate or enforce gambling laws.

Plaintiffs also cannot avoid dismissal by arguing that Pueblo acted arbitrarily or capriciously in exercising its liquor licensing authority. Colorado law grants local licensing authorities broad discretion in granting and denying liquor licenses, and courts will not disturb those decisions absent a clear abuse of discretion. See *Quedens v. J. S. Dillon & Sons Stores Co.*, 360 P.2d 984, 986 (Colo. 1961); *Board of Cnty. Comm'rs v. Salardino*, 329 P.2d 629 (Colo. 1958); *Brass Monkey, Inc. v. Louisville City Council*, 870 P.2d 636, 639 (Colo. App. 1994). It is not the role of this Court to second guess Pueblo's discretionary licensing decisions where there is competent support for them.

Based on the allegations and exhibits referenced by Plaintiffs themselves, Pueblo's actions were not arbitrary or capricious. Pueblo Municipal Code § 9-6-6 has long prohibited the use of machines for the "purpose of gambling or gain other than amusement." [ECF 36-3, at 3.] Plaintiffs do not allege their machines are strictly for amusement. To the contrary, the Farley Report confirms that the games involve play for pecuniary gain and that outcomes are drawn from finite pools not affected by the player's actions. [ECF 36-9 at 6.] The report further describes a "1 Point" consolation feature that still results in a loss of points on a turn, confirming that value is placed at risk on each play. That is precisely the kind of activity Pueblo was permitted to regulate and investigate.

In short, Plaintiffs have not plausibly alleged a protected property interest, nor have they plausibly alleged that Pueblo deprived them of such an interest without due process. Count II should be dismissed.

**F. Count III Fails to State an As-Applied Vagueness Claim Against Pueblo**

Plaintiffs' as-applied vagueness claim against Pueblo likewise fails because it rests on conclusory assertions, an improper reliance on a privately commissioned report, and allegations that do not plausibly establish lack of fair notice or arbitrary enforcement by Pueblo.

Plaintiffs frame their claim as a challenge to Pueblo's enforcement "as applied to the Farley-defined configuration." [ECF 25 ¶ 82.] But that framing is legally defective. A privately retained consultant report does not constitute law, does not bind municipal enforcement, and cannot establish the constitutional baseline for an as-applied vagueness analysis. As noted above, Plaintiffs' own report expressly disclaims any legal authority. [ECF. 36-9 at 17.] Plaintiffs cannot rely on that report as if it were a legal standard while its authors explicitly disavow any such role.

More fundamentally, Plaintiffs' vagueness claim fails because Pueblo's ordinance does not lack objective standards. Pueblo's gambling ordinance mirrors and incorporates Colorado's gambling statutes set forth in C.R.S. § 18-10-101, et seq. See [ECF 36-10, at 1; ECF 25, ¶ 38.] Those statutes, and Pueblo's corresponding municipal code provisions, expressly define "gambling," "gambling device," and "simulated gambling device." The existence of those defined terms defeats Plaintiffs' claim that Pueblo's enforcement was standardless or untethered to objective criteria.

Plaintiffs' contrary argument depends on the same improper premise that the Court must accept as true that their machines are lawful contests of skill. Even if true, such allegations would not establish lack of fair notice which is required to state a claim for a constitutional violation. To the contrary, Plaintiffs themselves plead that their machines involve the risking of points or credits for potential gain and that outcomes are drawn from finite pools not controlled by the player. See [ECF 25 ¶ 21; ECF 36-9 at 6.] Colorado law defines gambling to include risking money, credit, deposit, or other thing of value for gain contingent in whole or in part upon chance. C.R.S. § 18-10-102(2). Plaintiffs, like all citizens, are charged with notice of applicable law. They cannot plausibly allege they lacked fair warning that statutes and ordinances governing gambling devices could apply to their machines.

Nor do Plaintiffs plausibly allege arbitrary enforcement by Pueblo. As to Pueblo, the FAC identifies cease-and-desist communications, licensing determinations involving third-party liquor licensees, ordinance adoption, and a search conducted pursuant to a judicially approved warrant. [ECF 25, ¶¶ 35–40, 83.] None of those allegations reflects ad hoc enforcement untethered to law. Cease-and-desist letters are remedial notices. Licensing determinations are governed by established procedures. See [ECF 36-11] And the search was conducted pursuant to a warrant issued by a neutral magistrate based on suspected violations of gambling laws.

Plaintiffs' Response argues that Pueblo could not act unless some court or agency had first declared the machines illegal. That is incorrect. Colorado home-rule municipalities possess independent authority to enact and enforce ordinances governing local matters,

including ordinances mirroring state statutes, so long as they do not conflict with state law.

See **Colo. Const. art. XX, § 6**; *City of Longmont v. Colo. Oil & Gas Ass'n*, 369 P.3d 573

(Colo. 2016). Nothing in Colorado law requires a municipality to first obtain a statewide

judicial ruling before enforcing such ordinances.

Because Pueblo's ordinance mirrors state law, contains defined terms, and was

enforced through ordinary procedures, Plaintiffs fail to plausibly allege that Pueblo applied

a vague or standardless law in violation of due process. Count III should be dismissed.

### G. Plaintiffs Fail to State a First Amendment Claim Against Pueblo

Plaintiffs fail to plausibly allege that Pueblo regulated protected speech. The First

Amended Complaint attempts to constitutionalize routine municipal enforcement actions

related to suspected illegal gambling, but enforcement of laws directed at unlawful conduct

does not implicate the First Amendment.

At the outset, Plaintiffs do not identify any specific expressive activity that Pueblo

allegedly restricted. Instead, they assert in conclusory fashion that enforcement activity

"chilled" their speech because they believe their gaming machines are lawful. See [ECF 25

¶¶ 89 through 95.] These allegations do not establish regulation of speech. They only reflect

disagreement with enforcement decisions directed at suspected unlawful conduct, not

suppression of protected expression.

Even if Plaintiffs' allegations could be construed to involve commercial speech, such

speech receives First Amendment protection only if it concerns lawful activity. *Central

Hudson Gas and Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563-564

(1980). The Supreme Court has made clear that speech proposing or facilitating illegal

transactions is categorically excluded from First Amendment protection. **United States v. Williams**, 553 U.S. 285, 297 (2008). Likewise, when the underlying commercial activity is unlawful, any First Amendment interest in advertising or promoting that activity is altogether absent. See **United States v. Williams**, 553 U.S. 285, 297 (2008).

Here, Pueblo's alleged actions were directed at suspected illegal gambling activity. Plaintiffs' unilateral assertion that their devices are lawful does not transform speech proposing or facilitating that activity into protected expression. To the extent Plaintiffs claim a right to advertise, promote, or facilitate operation of gaming devices that fall within gambling prohibitions, such speech is not constitutionally protected.

Plaintiffs also fail to allege a plausible prior restraint or informal censorship theory. The allegations concern cease and desist communications and licensing determinations involving suspected unlawful conduct on licensed premises. Law enforcement officers may notify businesses of suspected illegal activity and direct that such activity cease. Licensing authorities may consider suspected unlawful conduct when evaluating applications. These routine governmental functions do not constitute speech-based regulation or unconstitutional censorship. For all of these reasons, Count IV should be dismissed.

### H.  Count V Fails to State a Claim for Municipal Liability

Plaintiffs' municipal liability claim against Pueblo fails as a matter of law because Plaintiffs do not plausibly allege either an underlying constitutional violation or a municipal policy that was the moving force behind such a violation.

To state a claim for municipal liability under §1983, a plaintiff must allege sufficient facts to make it plausible that municipal employees committed a constitutional violation and

that a municipal policy or custom caused that deprivation. Where a plaintiff fails to state an underlying constitutional violation, a Monell claim necessarily fails. ***City of Los Angeles v. Heller***, 475 U.S. 796, 799 (1986).

As explained above, Plaintiffs have not plausibly alleged any constitutional violation by Pueblo. They do not plausibly allege a due process violation, a vagueness violation, a First Amendment violation, or any other constitutional injury attributable to Pueblo. That alone defeats Count V.

Even aside from the absence of an underlying constitutional violation, Plaintiffs also fail to plausibly allege that an unconstitutional Pueblo policy caused a deprivation of rights. Their allegations against Pueblo consist of routine governmental actions: the adoption of an ordinance mirroring Colorado gambling statutes, the issuance of cease-and-desist letters, participation in liquor licensing decisions, and a search conducted pursuant to a judicial warrant. None of those actions, either individually ***or*** collectively, plausibly established an unconstitutional municipal policy.

The ordinance at issue mirrors already enacted Colorado gambling laws and reflects Pueblo's ordinary authority as a home-rule municipality to enact and enforce local ordinances addressing suspected illegal gambling without its jurisdiction. Enacting such an ordinance does not itself establish an unconstitutional policy. Nor does it show that Pueblo adopted a policy specifically targeting Plaintiffs rather than regulating conduct prohibited under state law.

Plaintiffs likewise cannot transform cease-and-desist letters or liquor licensing communications into municipal policy causing constitutional injury. Cease-and-desist letters

are remedial notices of suspected unlawful activity. Licensing determinations are made through established procedures that provide notice, hearing, and appeal rights. See [ECF. 36-11] The April 2025 search was conducted pursuant to a judicially authorized warrant based on suspected gambling violations, not as part of some extra-legal campaign.

Because Plaintiffs have failed to plausibly allege the existence of an unconstitutional municipal policy or that any such policy was the moving force behind a constitutional deprivation, Count V must be dismissed.

## I. Plaintiffs Cannot Cure Pleading Deficiencies Through Their Response Brief

Plaintiffs attempt to supplement their First Amended Complaint through their Response with additional factual allegations and arguments concerning the alleged operation of their gaming machines, relationships between parties identified in the First Amended Complaint, injuries, and the circumstances surrounding enforcement activity. These new assertions cannot be considered when evaluating Pueblo's Motion to Dismiss,

It is well established that when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts evaluate the sufficiency of the complaint itself, not factual allegations or materials presented for the first time in briefing. *Ajaj v. Federal Bureau of Prisons*, 838 F. Supp. 2d 1108, 1112 (D. Colo. 2011) (holding that when considering a motion to dismiss, the court considers only the claims articulated in the complaint and documents referenced therein).

Consistent with this principle, federal courts in Colorado have repeatedly held that a plaintiff cannot amend a complaint by adding factual allegations in a response to a motion to dismiss. In *Abdulina v. Eberl's Temporary Services, Inc.,* the District of Colorado

explained that a plaintiff cannot amend her complaint by adding factual allegations in response to defendant's motion to dismiss. ***Abdulina v. Eberl's Temporary Services, Inc.,*** 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). Likewise, in ***Sudduth v. CitiMortgage, Inc.****,* the court held that plaintiffs cannot amend their complaint by adding factual allegations in response to a defendant's motion to dismiss for failure to state a claim. See ***Sudduth v. CitiMortgage, Inc.,*** 79 F. Supp. 3d 1193, 1198 (D. Colo. 2015).

Here, to name a few, Plaintiffs' Response includes expanded descriptions of their devices, additional explanations regarding how the machines allegedly operate, and new arguments concerning regulatory enforcement. These assertions do not appear in the First Amended Complaint. Rather than relying on the allegations actually pleaded, mostly conclusory statements, Plaintiffs attempt to supplement the First Amended Complaint through briefing.  The Court should not consider newly argued-for "facts" from Plaintiffs' Response.

Because Rule 12(b)(6) requires the Court to evaluate the sufficiency of the complaint as pleaded, and because Plaintiffs may not amend their complaint through their opposition brief, Defendants request that this Court not consider any additional plead facts not found in the First Amended Complaint.

## CONCLUSION

Plaintiffs' Response does not cure the jurisdictional and pleading defects identified in Pueblo's Motion to Dismiss. Plaintiffs continue to rely on conclusory assertions that their machines are lawful, attempt to transform ordinary municipal enforcement and licensing functions into constitutional violations, and seek to supplement the First Amended Complaint

19

through arguments raised for the first time in their Response. But the First Amended Complaint still fails to plausibly allege standing, a protected property interest, a due process violation, an as applied vagueness claim, a First Amendment violation, or a basis for municipal liability under *Monell.*

Wherefore, Defendant City of Pueblo, Colorado respectfully requests that the Court grant its Motion to Dismiss in its entirety, dismiss all claims against Pueblo with prejudice, award Pueblo its costs and fees to the extent permitted by law, and grant such other and further relief as the Court deems just and proper.

DATED this 16th day of March, 2026.

*/s/ L. Kathleen Chaney*
L. Kathleen Chaney
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net
*Attorneys for Defendant City of Pueblo, Colorado*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March, 2026, a true and correct copy of the foregoing **CITY OF PUEBLO, COLORADO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** was filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Edward C. Hopkins Jr., Esq.
Raymond K. Bryant, Esq.
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400 80202
Phone: (720) 515-6165
E-mail: ed@rightslitigation.com
        raymond@rightslitigation.com
*Attorney for Plaintiffs*

Jonathan K. Cooper, Esq.
Anthony E. Derwinski, Esq.
Ruegsegger Simons & Stern, LLC
Civil Rights Litigation Group
1700 Lincoln Street, Suite 4500
Denver, CO 80203
Telephone: (303) 575-8070
Email: jcooper@rs3legal.com
        aderwinski@rs3legal.com
*Attorney for Defendants Phibbs, Hartman, Gregg, and Schroder in his individual capacity*

Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, CO 80903
Phone: (719) 385-5909
Email:  anne.turner@coloradosprings.gov
*Attorneys for Defendant City of Colorado Springs*

*Printed copy with original signature on file at the office of Lambdin & Chaney, LLP*

/s/ L. Kathleen Chaney
L. Kathleen Chaney, Esq.
LAMBDIN & CHANEY, LLP