## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  25-cv-3588-KAS

TREY FRANZOY, an individual;
PATRIOT CONTEST & GAMES, LLC, a Wyoming limited liability company; and
CHARLIE CHEDDA'S, LLC, a Wyoming limited liability company,

      Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado Division of
    Gaming, Colorado Department of Revenue, and in his individual capacity;
MICHAEL PHIBBS, in his individual capacity;
DANIEL J. HARTMAN, in his individual capacity;
KIRSTEN GREGG, in her individual capacity;
CITY OF GRAND JUDCTION, COLORADO;
CITY OF PUEBLO, COLORADO; and
CITY OF COLORADO SPRINGS, COLORADO,

      Defendants.

---

## CITY OF COLORADO SPRINGS'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS

---

OFFICE OF THE CITY ATTORNEY FOR
THE CITY OF COLORADO SPRINGS
Marc Smith, Acting City Attorney
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Phone:  (719) 385-5909
Fax:  (719) 385-5535
Email:  anne.turner@coloradosprings.gov

**TABLE OF CONTENTS**

Page

ARGUMENT...................................................................................................................................1

    I.     Plaintiffs fail to allege that a Colorado Springs policy or custom was the
moving force of the alleged constitutional violation. ..........................................................1

          A.  Plaintiffs fail to allege municipal liability based on a Chief of Police decision. ........1

          B.  Plaintiffs fail to allege municipal liability based on a widespread custom.................1

          C.  Plaintiffs fail to allege municipal liability based on a failure to train........................2

    II.    Plaintiffs fail to allege that Colorado Springs violated their constitutional rights............3

          A.  The state court and district attorney's office authorized Colorado Springs's
retention of the Monetary Property for twenty-two months. .....................................3

          B.  Colorado Springs did not violate Plaintiffs' constitutional rights by
returning the Monetary Property on April 21, 2025. ..................................................3

              1.   March 13, 2025 was not a hard deadline for Colorado Springs's return
of the Monetary Property. ...........................................................................4

              2.   The Due Process Clause, not the Fourth Amendment, governs
Colorado Springs's retention of the Monetary Property......................................4

              3.   Plaintiffs fail to allege a plausible Due Process violation...................................6

          C.  Plaintiffs fail to state a Procedural Due Process claim based on Colorado
Springs's current retention of Plaintiffs' equipment..................................................7

    III.   Leave to amend should be denied as futile ......................................................................10

CONCLUSION...............................................................................................................................10

Defendant the City of Colorado Springs ("Colorado Springs") files its reply brief in further support of its Motion to Dismiss (Doc. 34) and in reply to Plaintiffs Response (Doc. 44).

## ARGUMENT

**I.    Plaintiffs fail to allege that a Colorado Springs policy or custom was the moving force of the alleged constitutional violation.**

### A.    Plaintiffs fail to allege municipal liability based on a Chief of Police decision.

In the Response, Plaintiffs abandon the allegation that "a final policymaker's decision to maintain inadequate procedures" establishes their claim. (Doc. 25 ¶ 115; Doc. 34 at 5-6) They pivot to arguing instead that "CSPD's evidence unit exercised authority the Chief delegated" and, thus, Colorado Springs is liable under *Pembauer v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). (Doc. 44 at 12)

But Plaintiffs say nothing in their complaint of the Chief's purported delegation of final decision-making authority to the evidence unit, or to some unnamed member. Plaintiffs nowhere allege that the evidence unit's decisions are exempt from review or discipline by the Chief. Plaintiffs' assertion of decision-making delegation, made for the first time in the Response, fails to save the claim. *Warad W., LLC v. Sorin CRM USA Inc.,* 119 F. Supp. 3d 1294, 1305 (D. Colo. 2015) (New factual allegations in a response brief cannot be used to survive a motion to dismiss.).

Plaintiffs further argue, "The Chief knew of a court order directing return," acquiesced in the evidence unit's "defiance" of the order, and "took no corrective action." (Doc. 44 at 12-13) But, again, the allegations do not appear in the complaint. (Doc. 25 ¶ 115) Nor do Plaintiffs cite any authority for the notion that the Chief's alleged "sustained acquiescence constitutes approval." (Doc. 44 at 12-13) Plaintiffs fail to state a claim based on a final policymaker decision.

### B.    Plaintiffs fail to allege municipal liability based on a widespread custom.

Plaintiffs maintain that CSPD's opening of a property return office in July 2023 shows its

custom of "challenges with property returns" that caused the violation of their rights in April 2025. (Doc. 44 at 14) But as Colorado Springs argued, the "challenges" that prompted CSPD's opening of the property return office had nothing to do with the alleged delay of which Plaintiffs complain. (Doc. 34 at 7-8) Rather, people "faced challenges with multiple check-ins at the Police Operations Center, leading to increased congestion in the lobby area and minimal privacy." (Doc. 34-10 at 2) Plaintiffs do not disclaim the article's reporting; Plaintiffs themselves cite it throughout the Response. (Doc. 44 at 3, 10, 13, 14) Plaintiffs fail to allege a plausible claim that CSPD had a widespread custom of delaying property returns. (Doc. 34 at 6-8; Doc. 25 ¶ 116)

### C.    Plaintiffs fail to allege municipal liability based on a failure to train.

In the Response, Plaintiffs argue that "Policymakers know to a moral certainty that the unit will receive court orders directing return" and, thus, acted with "deliberate indifference." (Doc. 44 at 13) But Plaintiffs do not, in fact, allege that CSPD failed altogether to train its evidence unit personnel, or that it failed to train them on complying with court orders for the return of property. (*See* Doc. 25 ¶ 117) Plaintiffs essentially argue that CSPD *must* have failed to train its evidence staff because they allegedly delayed the return of Plaintiffs' property. This is insufficient.

Plaintiffs also argue that the opening of the property return office in July 2023, two months after CSPD seized their property pursuant to a warrant, "proves Colorado Springs had actual notice that its property-return procedures were failing." (Doc. 44 at 13) The argument is unavailing. As discussed, the opening of the property return office had nothing to do with the evidence unit's delayed return of property; it addressed congestion in the lobby and lack of privacy. (*See* Doc. 34-10) Nor is there any temporal correspondence between the opening of the property return office in July 2023 and CSPD's return of the property in April 2025. (Doc. 25 ¶¶ 115-117)

Finally, Plaintiffs argue that they "do … allege specific facts about who, what, where, and when that establish a plausible claim." (Doc. 44 at 14) They allege the "May 11, 2023 seizure;

2

February 6, 2025, court order; March 13 deadline; April 11, 16, and 18 postponements; [and] April 21 return." (*Id.*) But Plaintiffs' Amended Complaint is devoid of facts about the evidence unit's "training or supervision—when it occurred, who conducted it, or how it was deficient." *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012). In sum, Plaintiffs fail to state a *Monell* claim.

## II. Plaintiffs fail to allege that Colorado Springs violated their constitutional rights.

### A. The state court and district attorney's office authorized Colorado Springs's retention of the Monetary Property for twenty-two months.

Colorado Springs argued that based on the TRO entered in the civil forfeiture action, it lawfully retained Plaintiffs' Monetary Property for the twenty-two months from its seizure on May 11, 2023 to March 13, 2025, when the state court ordered its return. (Doc. 34 at 9-10) In the Response, Plaintiffs argue that the TRO became invalid when the district attorney dismissed the criminal charges against Franzoy, on April 23, 2024. (Doc. 44 at 6; Doc. 34 at 3 ¶ 7)

But Plaintiffs cite no authority for the notion that "[a] TRO loses its constitutional basis when the underlying proceeding that justified it terminates." (*Id.*) In addition, both Plaintiffs' complaint and Franzoy's motion to dismiss the civil forfeiture action undermine their argument. In the complaint, Plaintiffs concede that the government's retention of the Monetary Property was justified at least until February 6, 2025. (*See* Doc. 25 ¶ 64) In the civil forfeiture action, Franzoy did not seek return of the Monetary Property until November 21, 2025, seven months after the district attorney's dismissal of the gambling charges. (*See* Doc. 34-5)

Furthermore, Plaintiff does not allege that the district attorney's office sent CSPD a release for the Monetary Property in April 2024, upon its dismissal of the gambling charges. In sum, CSPD was not authorized to return the Monetary Property to Franzoy any earlier than March 13, 2025.

### B. Colorado Springs did not violate Plaintiffs' constitutional rights by returning the Monetary Property on April 21, 2025.

3

**1. March 13, 2025 was not a hard deadline for Colorado Springs's return of the Monetary Property.**

In the Response, Plaintiffs summarize the hearing on Franzoy's motion to dismiss the civil forfeiture action (Doc. 44 at 3-4), but they fail to mention, let alone reckon with, the judge's expressions of doubt about the length of time it might take the government to return the Monetary Property. (*See* Doc. 34-6 at 10:5-6 ("anything that [the government] can do, that [it] want[s] to do to preserve [the Monetary Property] as evidence, [it] can do that"); *id.* at 10:5-7 ("My thought is, I give you 35 days to get that done, but I don't know …..")) Plaintiffs also repeatedly characterize the "order for a status report" that the judge anticipated needing to issue as an "enforcement mechanism." (Doc. 44 at 2, 3, 6) But it further evidences the judge's belief that the government may not return the Monetary Property to Franzoy by March 13, 2025. (*See* Doc. 34-6 at 11:5-7 ("[I]f I don't hear something from everybody in 35 days, I'm probably going to send out an order for a status report, let me know what's going on.")) March 13, 2025 was an aspirational deadline.

**2. The Due Process Clause, not the Fourth Amendment, governs Colorado Springs's retention of the Monetary Property.**

In the Motion, Colorado Springs argued that the Fourteenth Amendment's Due Process Clause, not the Fourth Amendment, governs CSPD's handling of the Monetary Property after its initial seizure, citing *Snider v. Lincoln County Board of County Commissioners*, 313 Fed. Appx. 85, 93 (10th Cir. 2008) (unpublished) and *Hicks v. City & County of Denver*, No. 22-CV-01136-CNS-JPO, 2025 WL 1017679, at *4 (D. Colo. Apr. 4, 2025).[1] (Doc. 34 at 11-12)

---

[1] In the Response, Plaintiffs assert that "Colorado Springs cites *Asinor v. District of Columbia*, 111 F.4th 1249 (D.C. Cir. 2024), for the proposition that the Fourth Amendment does not govern property retention." (Doc. 44 at 2) No, it didn't. In the Motion, Colorado Springs cited to the Amended Complaint, where *Plaintiffs* cited *Asinor* as support for their contention that the Fourth Amendment governs the analysis of their claim. (*See* Doc. 34 at 12, citing Doc. 25 ¶ 61)

In the Response, Plaintiffs urge the Court to reject *Snider* and *Hicks* as non-binding, unpublished authority. (Doc. 44 at 7-8) They further attack *Snider* for predating *Manuel v. City of Joliet*, 580 U.S. 357 (2017). (*Id.* at 7) In *Manuel*, the Supreme Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention [of the person] even beyond the start of legal process." 580 U.S. at 369. Plaintiffs argue that "[a]lthough *Manuel* involved personal detention, its reasoning … applies with equal force to property." (Doc. 44 at 6)

Plaintiffs' argument is unavailing for many reasons. First, *Manuel* had nothing to do with the government's retention of lawfully seized property. While in *Asinor* the D.C. Circuit Court found *Manuel*'s "logic" to apply to the government's "prolonged seizure of effects," *Asinor*, 111 F.4th at 1256, Plaintiffs cite no caselaw to suggest that the Tenth Circuit would conclude likewise. Second, although *Snider* is unpublished, published Tenth Circuit opinions support *Snider*'s holding that the Due Process Clause governs the issue here. *See Kripp v. Luton*, 466 F.3d 1171, 1173 (10th Cir. 2006); *Winters v. Board of Cty. Comm'rs*, 4 F.3d 848, 853, 856 (10th Cir. 1993). Third, the fact that *Snider*, *Kripp*, and *Winters* predate *Manuel* is of no moment. *Manuel* did not address the government's retention of lawfully seized property. *Manuel*, 580 U.S. at 369.

Fourth, the court in *Hicks* noted the circuit split on this issue. *See Hicks*, 2025 WL 1017679 at *4 n.4. Fifth, Plaintiffs here advocate for the minority position. "Five circuits—the First, Second, Sixth, Seventh and Eleventh—have held in precedential opinions that the Fourth Amendment does not support a claim for the government's retention of legally seized property." *Asinor*, 111 F.4th at 1261-62 (Henderson, J., concurring). Only two circuits—the D.C. and Ninth—have held in published opinions that it does. *See Asinor*, 111 F.4th at 1252; *Brewster v. Beck*, 859 F.3d 1194, 1198 (9th Cir. 2017). Lastly, the First Circuit decided *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017), *superseded by statute on other grounds by* Fed. R. App. P. 3(c)(6), after *Manuel* and

expressly rejected *Manuel*'s application to property retention. In sum, in the Tenth Circuit, like in most other circuits, the Due Process Clause governs the retention of lawfully seized property.

### 3. Plaintiffs fail to allege a plausible Due Process violation.

In the Motion, Colorado Springs argued that Plaintiffs fail to state a plausible Due Process claim against it for three reasons: (1) Plaintiffs fail to allege that Colorado Springs had the unfettered authority to return the Monetary Property; (2) the extra thirty-nine days it took Colorado Springs to return the Monetary Property "was not of unconstitutional proportions," and (3) "Plaintiffs undoubtedly were accorded due process." (Doc. 34 at 12-14)

In the Response, Plaintiffs do not dispute arguments (1) and (3). Regarding argument (2), they argue that "nothing prevented return" of the Monetary Property once the district attorney provided a release to CSPD on March 12, 2025. (Doc. 44 at 4) They also assert that CSPD didn't "act" until the state court judge requested a status report on April 9, and it then postponed the return three times—adding, in total, one additional week to the return. (*Id.*)

Plaintiffs fail to cite any legal authority for the notion that the government's thirty-nine-day delay in returning property deprives the owner of due process. In a similar context, where the Supreme Court assessed whether the government violated the claimant's due process rights by delaying the institution of civil forfeiture proceedings, the Supreme Court weighed "four factors: length of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983). "[T]he overarching factor is the length of delay," and "short delays—of perhaps a month or so—need less justification than longer delays." *Id.* at 565.

Here, all four factors weigh against Plaintiffs. First, the 39-day delay was "short" by Supreme Court standards. 461 U.S. at 565. Second, the government was entitled to do "anything" it wanted to do to preserve the Monetary Property. (*See* Doc. 34-6 at 10:5-6) Third, despite having

6

a ready-made forum in the civil forfeiture action and an opportunity to be heard *in the moment* of the government's prolonged retention of the Monetary Property, Plaintiffs first complained here, seven months later. Fourth, Plaintiffs fail to allege any damages specific to the thirty-nine-day delay. (*See* Doc. 25 ¶¶ 65, 118) Plaintiffs fail to allege they were denied due process.

**C.      Plaintiffs fail to state a Procedural Due Process claim based on Colorado Springs's current retention of Plaintiffs' equipment.**

In the Motion, Colorado Springs argued that Plaintiffs fail to state a procedural due process claim based on its continued retention of Plaintiffs' equipment because Plaintiffs fail to allege that they pursued available state remedies—*e.g.,* filing a conversion or replevin action or a motion under Colorado Rule of Criminal Procedure 41(e). (Doc. 34 at 14-15) As support, it cited *Pinder v. Mitchell*, 658 Fed. App'x 451, 453 (10th Cir. 2016) (unpublished) and *Walker v. Wegener*, No. 11-CV-03238-PAB-KMT, 2012 WL 4359365, at *20 (D. Colo. Aug. 30, 2012), *report and recommendation adopted*, 2012 WL 4355621 (D. Colo. Sept. 24, 2012). (*Id.*)

In the Response, Plaintiffs ignore *Walker*, attack *Pinder* as "unpublished," and argue that the *Parratt/Hudson* framework *Pinder* utilized does not apply here because "[t]his deprivation was neither random nor unauthorized." (Doc. 44 at 9-10) They contend they were not required to exhaust state law remedies, citing *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982), *Zinermon v. Burch*, 494 U.S. 113, 132 (1990), and Chief Judge Holmes's concurrence in *Pinder*. (*Id.*)

Plaintiffs' Response, again, is unavailing. In *Parratt v. Tayor,* 451 U.S. 527, 542-44 (1981), the Supreme Court held that a deprivation of property caused by a state employee's random, unauthorized conduct does not give rise under 42 U.S.C. § 1983 to a procedural due process claim unless the State fails to provide an adequate post-deprivation remedy.[2] The plaintiffs in *Pinder*,

---

[2] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), involved the intentional deprivation of property.

like Plaintiffs here, attempted to "distinguish *Parratt* as involving unauthorized and seemingly-random acts of state employees [whereas] their case involve[d] constitutional violations that were foreseeable and constituted official state procedure." 658 Fed. Appx. at 454. The Tenth Circuit rejected the argument, reasoning that "post-deprivation remedies are not per se inadequate simply because *Parratt*'s rogue actor is not present." *Id.* Rather, a claimant's duty to exhaust state remedies arises where the State cannot " 'provide a meaningful hearing before the deprivation takes place,' " such as where a "state can take property pursuant to a search warrant." *Id.* at 454-55, quoting *Parratt*, 451 U.S. at 541. *See also Hudson*, 468 U.S. at 533 (claimants must exhaust state remedies "because predeprivation process is impracticable").

Applied here, Colorado Springs seized Plaintiffs' property pursuant to a warrant (*see* Doc. 44 at 9) and, thus, pre-deprivation process was impracticable. Therefore, "[o]nly if the State provided no remedies, or the remedies were inadequate, could [Plaintiffs] claim a taking of property occurred without due process of law." *Pinder*, 658 Fed. App. at 454. Indeed, "the violation has not actually occurred until the state has denied due process." *Id.*

Chief Judge Holmes's separate concurrence in *Pinder* does not help Plaintiffs. For starters, it is not binding authority. *See Frasier v. Evans*, 992 F.3d 1003, 1017 (10th Cir. 2021). The judge would require "plaintiff show that there were no adequate state-law postdeprivation remedies [only] when the claim involves '*random and unauthorized*' deprivations of property rather than deprivations according to some established policy, procedure, or custom." 658 Fed. App. at 458 (emphasis in original). But the *Pinder* "complaint averments … never refer[red]  to a specific policy, procedure, or official act that guided the seizure….[N]othing in the complaint suggests that Sheriff Mitchell acted pursuant to any directive or order. [Thus,] Sheriff Mitchell's retention of the guns was … a random and unauthorized act." *Id.*

8

So too, here. Plaintiffs fail to plausibly allege that the CSPD evidence unit currently retains Plaintiffs' equipment "pursuant to any directive or order." *Id.* at 458. Plaintiffs allege no plausible official policy, Chief of Police decision, or widespread custom that would make CSPD's current retention of Plaintiffs' equipment "anything other than a random and unauthorized act." *Id.* (*See* Doc. 25 ¶¶ 30, 52, 55, 115) Thus, even under the *Pinder* concurrence, Plaintiffs fail to state a claim.

Neither *Patsy* nor *Zinermon*, on which Plaintiffs also rely, counsel otherwise. (*See* Doc. 44 at 9) In fact, *Zinermon* undermines Plaintiffs' position. There, the Supreme Court held that procedural due process claims require the plaintiff to exhaust state law remedies before seeking relief under Section 1983. *Zinermon*, 494 U.S. at 125. "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."[3] *Id.* at 126.

Citing *Zinermon,* Plaintiffs erroneously argue that CSPD was required to provide "pre-deprivation process." (Doc. 44 at 9) But "there need not be an opportunity for a pre-deprivation hearing before a state can take property pursuant to a search warrant." *Pinder*, 658 Fed. App. at 454-55, citing *Fuentes v. Shevin*, 407 U.S. 67, 93 n.30, 92 (1972). As *Zinermon* explains, "*Parratt* and *Hudson* represent a special case … in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon*, 494 U.S. at 128.

Lastly, Plaintiffs argue that Colorado Springs fails to identify an adequate state remedy. (Doc. 44 at 10) Wrong again. Colorado Springs asserted, "Plaintiffs had … a conversion or

---

[3] In *Patsy*, the Supreme Court held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 516. But *Patsy* was an employment discrimination case where, unlike a procedural due process claim, the constitutional violation is complete when the employer's conduct occurs.

9

replevin claim' to recover the equipment and damages." (Doc. 34 at 15, quoting *Walker*, 2021 WL 4355621 at \*20) *See also Mason v. Farm Credit of S. Colo.,* 419 P.3d 975, 983-984 (Colo. 2018) (recognizing state law conversion and replevin claims). Plaintiffs could also file a motion pursuant to Colorado Rule of Criminal Procedure 41(e), which in the absence of an open criminal case is construed as an independent civil equitable action. *See, e.g.,* **Exhibit K,** *AJS Holdings, LLC v. McCann*, Case No. 17CV4724, slip. op. at 2 (Dist. Ct., City & Cty. of Denver, Jan. 31, 2018).

Plaintiffs also argue that "Colorado Springs dismissed … [t]he forfeiture action—the only state proceeding addressing the equipment—…and then retained the equipment without legal basis." (Doc. 44 at 10-11) Again, Plaintiffs err. The forfeiture action only governed the Monetary Property, not the equipment. (*See* Doc. 34-1 at 1 & ¶ 2) And the Court dismissed the forfeiture action over Colorado Springs's objection. (*See* Doc. 34-6)

Plaintiffs further argue that Colorado Springs "does not explain why thirty-one months of retention without a hearing satisfies due process." (Doc. 44 at 8) But Plaintiffs are barking up the wrong tree. Colorado Springs doesn't convene hearings on property detentions; courts do. CSPD is merely holding the equipment until the court and/or district attorney authorize its release.

## III.    Leave to amend should be denied as futile.

Plaintiffs acknowledge that leave may be denied where "amendment would be futile." (Doc. 44 at 15) At bottom, Plaintiffs complain that Colorado Springs (1) delayed return of their Monetary Property by thirty-nine days and (2) retain Plaintiffs' lawfully seized equipment. For the reasons stated, neither complaint is actionable here. Amendment would be futile.

### CONCLUSION

Plaintiffs' claim against the City of Colorado Springs should be dismissed with prejudice.

Respectfully submitted this 23rd day of March, 2026.

OFFICE OF THE CITY ATTORNEY
Marc Smith, Acting City Attorney

*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Phone:  (719) 385-5909
Fax:  (719) 385-5535
Email:  anne.turner@coloradosprings.gov

*Attorneys for Defendant City of Colorado Springs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2026, I electronically filed and served the foregoing using the CM/ECF system, which will send notification of this filing to the following:

Edward C. Hopkins, Jr. - ed@rightslitigation.com
Raymond K. Bryant - raymond@rightslitigation.com
*Attorneys for Plaintiffs*

Jonathan Cooper - jcooper@rs3legal.com
Anthony E. Derwinski - aderwinski@rs3legal.com
*Attorneys for Christopher Schroder, Michael Phibbs, Daniel Hartman and Kirsten Gregg*

Nicholas C. Poppe - npoppe@ndm-law.com
*Attorney for City of Grand Junction*

L. Kathleen Chaney - kchaney@lclaw.net
Sara Hilario - shilario@lclaw.net
*Attorneys for City of Pueblo*

 */s/ Eri Howard*
Eri Howard, Legal Secretary

11