## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into between TREY MICHAEL FRANZOY, an individual; CHARLIE CHEDDA'S, LLC a Colorado Limited Liability Company; (collectively referred to as "RELEASORS") and DAN RUBINSTEIN, District Attorney of the 21ˢᵗ Judicial District of Colorado ("RELEASEE"). RELEASORS and RELEASEE are sometimes jointly referred to as "the Parties."

DATE FILED: September 11, 2024 4:16 PM
FILING ID: A06D6166B7E23
CASE NUMBER: 2024CV30253

## DEFINITIONS

"Agreement" shall mean this Settlement Agreement and Release.

"RELEASORS" shall mean 1) Trey Michael Franzoy, and 2) Charlie Chedda's, LLC, a Colorado Limited Liability Company, with a business located at 2830 North Avenue, Suite C3A, Grand Junction, Colorado, 81501, and all of their heirs, assigns, agents, representatives and successors in interest, individually and collectively.

"RELEASEE" shall mean Dan Rubinstein, District Attorney of the 21ˢᵗ Judicial District of Colorado, and all of his respective employees, representatives, heirs, assigns, agents, representatives, insurers, attorneys, and successors in interest, past and present, individually and collectively, together.

"Premises" shall mean the physical business location of the business known as "Charlie Chedda's" operated and owned by RELEASORS at 2830 North Avenue, Suite C3A, Grand Junction, Colorado, 81501.

"Lawsuit" shall mean the civil action in the Colorado's 21ˢᵗ Judicial District Court, Civil Action No. 2019CV25.

## RECITALS

WHEREAS, RELEASORS have alleged that certain criminal statutes are unconstitutional as it relates to RELEASORS' business operations; and

WHEREAS, in connection with such allegations, RELEASORS have asserted various claims and causes of action against RELEASEE; and

WHEREAS, there is a dispute between the Parties as to the RELEASORS' claims and causes of action against RELEASEE; and

WHEREAS, RELEASEE denies any wrongdoing, liability, or cause or contribution as related to any of the RELEASORS' claims or causes of action; and

WHEREAS, the Parties enter this Agreement in order to avoid the uncertainties, expense and delay associated with litigation; and

WHEREAS, the Parties desire to enter into this Agreement to provide a full settlement and

52768274.1

**EXHIBIT**

**1**

discharge of all claims and actions of RELEASORS against RELEASEE for the claims and causes actions arising out of or due the Lawsuit, or any other dispute or matter on the terms and conditions set forth herein.

## AGREEMENT

### 1.0    General Release and Discharge

1.1    In consideration of the clauses set forth in Section 2 of this Agreement, RELEASORS hereby completely release and forever discharge RELEASEE from any and all past, present or future: claims, demands, obligations, actions, causes of action, wrongful death or survival claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract, violation of statute, or other theory of recovery, for actual, punitive or any other type of damages, whether known or unknown, which RELEASORS had, now have, or which may hereafter accrue or otherwise be acquired, including without limitation, those on account of, or may in any way grow out of the subject of the Lawsuit. Specifically, but not by way of limitation, the release and discharge herein includes any and all claims pursuant to federal law, the common law of any state, any federal statute, any state statute, any local law, any federal or state constitutional provision, and any claim for attorneys' fees under any state or federal statute or law. However, RELEASOR has the right to challenge the constitutionality of the statutes of any charges that are brought against him for any basis or to challenge the constitutionality of any amendments the legislature makes to any current statutes that impact his business.

1.2    RELEASORS acknowledge and agree that the release and discharge set forth herein is a general release. RELEASORS expressly waive and assume the risk of any and all claims for damages which now exist or may arise in the future, but of which RELEASORS does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect RELEASORS' decision to enter into this Agreement. RELEASORS enter into this Agreement with the full understanding of future adverse consequences of the subject of the Lawsuit and intend to release RELEASEE for such present or future adverse consequences, no matter what those consequences may be.

1.3    RELEASORS further agree that the actions and prohibitions agreed to by the RELEASEE as specified in this Agreement are a complete settlement and compromise of matters involving disputed issues of law and fact in the Lawsuit. RELEASORS assume the risk that the facts or law may be other than RELEASORS believe or understand them to be. It is understood and agreed to by the Parties that this Agreement is a compromise and settlement of disputed claims, and the actions and prohibitions agreed to be the RELEASEE are not to be construed as an admission of liability on the part of RELEASEE, by whom liability is expressly denied.

52768274.1

1.4     RELEASORS understand and agree that they, or anyone acting on their behalf, will not institute any further legal proceedings against RELEASEE based on or arising out of any matter that is, or could have been, the subject of the Lawsuit.

1.5     RELEASORS agree and covenant that they will authorize their counsel to enter into an appropriate stipulation to dismiss with prejudice all of their claims against RELEASEE in the Lawsuit. The stipulation for dismissal with prejudice will be authorized within one business day of execution of this Settlement Agreement by the final signatory. RELEASORS further agree and covenant that they will not sue, or assert any federal or state cause of action, at law or in equity, whether before a court of law or an administrative agency, against RELEASEE, for any claims, causes of action, liabilities, expenses or damages arising out of any acts or omissions by such person or entity that occurred prior to the date this Agreement is executed, including without limiting the generality of the foregoing, any act or omission arising out of, or related to the subject of the Lawsuit, whether raised in the Lawsuit or not. RELEASORS expressly waive any claims they may possess under any state or federal law of any kind or type, again without limiting the generality of the foregoing.

## 2.0     Actions and Limitations Agreed to by RELEASEE

2.1     The Parties agree that the Parties will be responsible for their own fees and costs, including, but not limited to: attorneys' fees, court costs, expert fees, etc. No money payment between the Parties is part of or contemplated by this Agreement.

2.2     RELEASEE agrees not to file charges or prosecute charges filed by any other entity against RELEASORS for violations of C.R.S. §18-10.5-103 and any inchoate offenses thereof, during any time that RELEASEE is serving as the District Attorney for Colorado's 21st Judicial District. RELEASEE's agreement not to prosecute is limited only to the gaming activities of RELEASORS using electronic gaming devices in use on the Premises as they existed on November 22, 2020 and are described in the expert report issued by Nick Farley & Associates, RELEASORS' retained expert in the Lawsuit, attached to this Agreement as Exhibit A and incorporated herein by reference. Any other gaming activity or electronic gaming device that is not described in Exhibit A is not subject to this Agreement. Any modifications or alternatives to the gaming systems as they are described in Exhibit A that are used or may be used in the future used by RELEASORS on the Premises are not subject to this Agreement, including but not limited to: new games, software updates to current games, new modes within a current game, etc. This Agreement is limited to any gaming activities that occur in the normal course of business of RELEASORS, and only for any gaming activities that occur on the Premises. Nothing in this provision shall be construed to prohibit the prosecution of RELEASORS for any criminal offense that is not addressed in the Lawsuit.

2.3     RELEASEE may pursue any other criminal charge against RELEASORS that is not specifically agreed to by the Parties in Section 2.2 of this Agreement. This Agreement does not contemplate restricting RELEASEE from filing any other charges or litigating any other case against RELEASORS beyond alleged violations of C.R.S. §18-10.5-103 and any inchoate offenses thereof.

52768274.1

## 3.0     Confidentiality and Non-Disparagement

3.1     RELEASORS and RELEASEE agree to comply with all terms of the following confidentiality agreement and acknowledge that RELEASORS' and RELEASEE'S agreement to do so was a necessary condition precedent to the decision on the part of the Parties to enter into this Agreement.

3.2     Except as otherwise provided for in this Agreement, RELEASORS and RELEASEE, understanding that certain facts of the underlying claim are publicly available information, mutually agree that the negotiations leading up to this Agreement, the settlement terms, and the other terms of this Agreement shall be strictly and entirely confidential as to third persons or entities, including and not limited to media outlets of any type whatsover or other litigants and their counsel, and shall not be divulged other than for legal advice, tax advice, or except as may be required by law. Upon inquiry, the Parties may state that any matters have been resolved, however, there shall be no reference made to the negotiations leading up to the settlement, nor the terms of this document or settlement.  The confidentiality provisions of this paragraph shall not apply to RELEASEE in producing records as is required by law, specifically the Colorado Open Records Act (Colo. Rev. Stat. §§24-72-201, *et al.*) and the Colorado Criminal Justice Records Act (Colo. Rev. Stat. §§24-72-301, *et al.*).  RELEASORS may, at their discretion, release this Agreement and discuss any information herein with the Court and any parties to any future criminal action against RELEASORS that is brought in any jurisdiction.

3.3     The Parties shall not publish, orally or in writing, any disparaging comments about the negotiations or terms of this Agreement, or assert, orally or in writing, that the resolution of the Lawsuit suggests wrongdoing or malfeasance by the RELEASEE.

3.4     RELEASORS' and RELEASEE'S counsel agrees to be bound by the terms of Paragraph 4 (Confidentiality and Non-Disparagement) of this Agreement to the same extent as RELEASORS and RELEASEE and RELEASORS and RELEASEE specifically direct counsel to fully comply with the terms of this Agreement.

3.5     The confidentiality and non-disparagement provisions are unlimited in duration.

## 4.0     Representation of Comprehension of Document

4.1     In entering into this Agreement, RELEASORS represent that they have relied upon the advice of their attorney who is the attorney of their own choice, concerning the legal and tax consequences of this Agreement, that the terms of this Agreement have been completely read and explained to RELEASORS by their attorney; and the terms of this Agreement are fully understood and voluntarily accepted by RELEASORS.  RELEASORS agree and understand that RELEASEE have made no promises or representations about the subject matter of the Lawsuit or this Agreement that are not expressly set forth in this Agreement.

## 5.0     Warranty of Capacity to Execute Agreement; No Assignment and Hold Harmless

Page 4 of 9

52768274.1

## Agreement

5.1    RELEASORS represent and warrant that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, except as otherwise set forth herein; that RELEASORS have the sole right and exclusive authority to execute this Agreement; and that RELEASORS have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement. In the event a third party seeks to assert claims under a transferred or subrogated interest, RELEASORS will defend and hold harmless the RELEASEE for any such claims.

## 6.0    No Admission of Liability

6.1    This Agreement is a settlement and compromise of disputed claims, and the actions and prohibitions agreed to in Section 2 of this Agreement shall not be construed as an admission of liability or a concession that any particular statute is unconstitutional or otherwise overly broad on the part of the RELEASEE and the RELEASEE expressly denies any liability or claims of unconstitutionality of any statute therefore.

## 7.0    Governing Law

7.1    This Agreement shall be construed and interpreted in accordance with the laws of the state of Colorado. Any dispute arising out of this Agreement shall by brought in the District Court, County of Mesa, State of Colorado.

## 8.0    Additional Documents

8.1    All Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

## 9.0    Multiple Originals, Counterparts, Facsimiles Deemed Originals

9.1    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument. This Agreement may be executed using facsimile signatures and such facsimile signatures shall be given the authority of original signatures for purposes of executing and enforcing the validity of this Agreement.

## 10.0    Entire Agreement and Successors in Interest

11.1    This Agreement contains the entire agreement between RELEASORS and RELEASEE. RELEASORS understand all other factors involved in this compromise settlement and dismissal of the Lawsuit prior to signing this Agreement. The Parties understand, acknowledge, and agree that this Agreement is fully integrated and supersedes all previous oral or written communications, discussions, or agreement of the Parties. This Agreement embodies the entire understanding of the RELEASORS and RELEASEE, and there are no other agreements or understandings, written or oral, in effect between the RELEASORS and RELEASEE relating to

Page 5 of 9

52768274.1

the subject matter hereof.

## 11.0  Construction of Agreement

11.1    The Parties agree that this Agreement shall not be construed or interpreted in favor or against any party in the event of a dispute because RELEASOR and RELEASEES were all involved in the negotiation and preparation of this Agreement.

## 12.0  Binding Effect

12.1    This Agreement shall inure to the benefit of, and be binding upon, all the successors, assigns, personal representatives, heirs, and successors in interest of the Parties.

## 13.0  Headings

13.1    The headings used in this Agreement are for the convenience of the Parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning and interpretation of this Agreement.

## 14.0  Amendment and Additional Assurances

14.1    This Agreement is intended to be self-operative.  This Agreement may not be amended except in a writing setting forth such amendment and executed by all Parties. Notwithstanding the foregoing, all Parties agree that, at the reasonable request of another party, they shall execute any further documents or instruments reasonably necessary to effectuate the transactions contemplated by this Agreement.

## 15.0  Severability

15.1    If any provision of this Agreement should ever be declared to be unenforceable, with the exception of RELEASORS' release of any and all claims arising out of their contact with RELEASEE as set forth in this Agreement, then the remainder of this Agreement shall continue to be binding upon the Parties.  The release of any and all claims as set forth in this Agreement is an integral part of this Agreement and is not severable.

## 16.0  Fees and Costs

16.1    All Parties to this Agreement shall bear all of their own costs and fees, including all attorneys' fees, incurred prior to or after the date this Agreement takes effect, whether or not such fees or costs were incurred in connection with reaching this Agreement.

## 17.0  Warranties

17.1    RELEASORS expressly warrant that they have carefully read the terms of this Agreement.  RELEASORS expressly warrant that they were afforded the opportunity to consult with counsel of her choosing prior to executing this Agreement, that they fully understand the terms of this Agreement, and that they enter into this Agreement knowingly and voluntarily, and without

52768274.1

coercion, duress or undue influence. RELEASORS expressly acknowledge that they believe the terms of this Agreement are appropriate to reach a full and final settlement of these matters. RELEASORS expressly understand and agree that their signature on this Agreement shall be forever binding, and no rescission, modification, or release of the Parties from the terms of this Agreement will be made for mistake or any other reasons. RELEASORS represent that they are legally competent to understand, enter into, and execute this Agreement and to accept full responsibility and assume the risk of any mistake of fact as to any damages, losses, or injuries, whether disclosed or undisclosed, sustained as a result of contact with any RELEASEES, any claim brought or that could be brought, or any other matter between the Parties occurring up to the date of signing this Agreement. RELEASORS further warrant and acknowledge that no promise or inducement was offered except as set forth herein and that this Agreement was executed by them without reliance upon any statement or representation by any persons or parties released or any representatives of such persons or parties concerning the nature or extent of any damages or any legal liability therefor. RELEASORS acknowledge that entering into this Agreement is not an admission by any entity or person of any wrongful or improper actions, but rather reflects the Parties' desire to resolve this matter amicably without additional expense or litigation.

52768274.1

IN WITNESS WHEREOF, the undersigned has executed this Agreement and as of the date hereinafter appearing.

Daniel P. Rubinstein
District Attorney for Colorado's 21st Judicial
District

STATE OF COLORADO          §
                           §
COUNTY OF MESA             §

Subscribed and sworn to before me by the person known to me as Dan P. Rubinstein, District Attorney for Colorado's 21st Judicial District, in the County of Mesa, State of Colorado, this /9th day of February 2020.

[SEAL]

Notary Public

My Commission expires:

KAREN L. SMITH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID #19974189240
My Commission Expires June 22, 2023

*{Signature and Jurat on Following Page}*

Page 8 of 9

52768274.1

TREY MICHAEL FRANZOY

AND

CHARLIE CHEDDA'S, LLC

By: Trey Michael Franzoy
Owner, Charlie Chedda's LLC

STATE OF _Colorado_ §
§
COUNTY OF _Pueblo_ §

BEFORE ME, the undersigned authority, on this day personally appeared Trey Michael Franzoy, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is competent to sign this Agreement, and that he executed the foregoing instrument for the purposes and consideration therein expressed.

Subscribed and sworn to before me by the person known to me as Trey Michael Franzoy in the County of _Pueblo_, State of Colorado, this _10th_ day of _February_, 2020. 2021

[SEAL]
RACHEL LEANN MCFARLAND
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20204012426
My Commission Expires April 1, 2024

Notary Public

My Commission expires: 04/01/2024

Page 9 of 9

52768274.1

Scanned with CamScanner