IN THE MUNICIPAL COURT IN AND FOR
THE CITY AND COUNTY OF PUEBLO, STATE OF COLORADO

## SEARCH WARRANT

THE PEOPLE OF THE STATE OF COLORADO
CITY AND COUNTY OF PUEBLO
TO: ANY PEACE OFFICER AUTHORIZED BY LAW TO EXECUTE SEARCH
WARRANTS IN THE ABOVE-NAMED COUNTY, GREETINGS:

DATE FILED
September 11, 2025 4:16 PM
FILING ID: A06D6166B7E23
CASE NUMBER: 2024CV30253

WHEREAS, Detective E Ortiz, has made an affidavit and complaint for the issuance of a search warrant, and

WHEREAS, the affidavit of the applicant seems proper and it appears that reasonable grounds or probable cause exists for the issuance of a search warrant for the reason(s) marked with an "X" below:

( ) Is stolen or embezzled:
    AND/OR
( X ) Is designated or intended for use as a means of committing a criminal offense or is or has been so used;
    AND/OR
(X) Is illegal to possess;
    AND/OR
(X ) Would be material evidence in a subsequent criminal prosecution.

WE THEREFORE COMMAND YOU, with the necessary and proper assistance to search at any time the following premises, person(s), motor vehicle, or thing(s), within the next fourteen (14) days, to-wit:

**704 Elmhurst Pl Steel City Eagles #3367**
**LOCATED IN THE CITY AND COUNTY OF PUEBLO STATE OF COLORADO.**

and you will search for the following person(s), property, motor vehicle or things, to-wit

All gambling devices, instruments and things used for the purpose of gambling, any gambling proceeds as described in Pueblo Municipal Ordinance 11-1-904, to include documents that may identify owners, managers, entrants, or any documents that serve as instructions to use/operate gambling devices. Any safes, backpacks and or closed containers located inside the establishment. Any surveillance equipment to include electronic storage devices and equipment and any other item otherwise unlawful to possess;

And if the same or any part thereof is found, that you seize the goods, property and things found and destroy them unless otherwise ordered of this Court, or unless they are admitted into any criminal proceedings conducted by a court of this state.

DATED this ___4th___ day of ___April___, 2025.

BY THE COURT:

EXHIBIT
4

IN THE MUNICIPAL COURT IN AND FOR

THE CITY AND COUNTY OF PUEBLO, STATE OF COLORADO

STATE OF COLORADO)                    APPLICATION AND AFFIDAVIT
                 ) ss                          FOR
CITY OF PUEBLO   )                    SEARCH WARRANT

The undersigned, being first duty sworn, upon oath, deposes and says:

1.  That this affidavit is made in support of an application for a search warrant to search the following premises, person(s), motor vehicle(s) or thing(s), to-wit:

    704 Elmhurst Pl Steel City Eagles #3367
    <u>LOCATED IN THE CITY AND COUNTY OF PUEBLO STATE OF COLORADO.</u>

2.  That the person(s), property, motor vehicle(s) or thing(s) to be searched for, and seized if found:
    ( ) Is stolen or embezzled; AND/OR
    ( X ) Is designated or intended for use as a means of committing a criminal offense or is

    or has been so used; AND/OR
    ( X ) Is illegal to possess; AND/OR
    ( X ) Would be material evidence in a subsequent criminal prosecution.

3.  The person(s), property, motor vehicle(s), or thing(s) to be searched for is or are:

    All gambling devices, instruments and things used for the purpose of gambling, any gambling proceeds as described in Pueblo Municipal Ordinance 11-1-904, to include documents that may identify owners, managers, entrants, or any documents, may include electronically stored documents, serve as instructions to use/operate gambling devices. Any safes, backpacks and or closed containers located inside the establishment. Any surveillance equipment to include electronic storage devices and equipment and any other item otherwise unlawful to possess;

4.  That additional facts submitted for this application are set out in an accompanying attachment incorporated herein by reference and made a part hereof as though fully set out herein, and designated as "Attachment A"

    NOW, THEREFORE, the undersigned Applicant moves this Court for the issuance of a Search Warrant for the address of location named or described above for the search and seizure of the above-described person(s), property, motor vehicle(s) or thing(s).

_____
Detective E. Ortiz                                          Date

4/2/2025

SUBSCRIBED AND SWORN to before me this __4th__ day of ___April___, 2025.

_____
Notary Public

JASON LEE SMITH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20214002242
MY COMMISSION EXPIRES FEB 26, 2029

ATTACHMENT "A"

(The following is submitted in support of the attached "Application and Affidavit for Search Warrant".)

The facts establishing grounds for the issuance of a search warrant, and showing probable cause believe they exist are as follows:

## BACKROUND OF YOUR AFFIANT

Your Affiant, Detective Eufracio Ortiz, has worked for the Pueblo Police Department for 8 years as a Police Officer and currently serves as a Detective for the Special Investigation Division, where his responsibilities include, but are not limited to, investigations surrounding the distribution of illegal narcotics, related firearm violations, gang and gambling investigations.

During employment as a law enforcement officer your Affiant has conducted numerous narcotic and vice investigations. Your Affiant has been trained by the Rocky Mountain High Intensity Drug Trafficking Area, Pueblo Police Department Law Enforcement Academy, and by DEA, ATF, and FBI Task Force Officers with years of experience in their respective field.

Your Affiant has also applied for multiple search warrants in the past related to the possession and distribution of illegal narcotics, firearms and illegal gambling establishments. Your Affiant is primarily responsible for the investigation of individuals and groups of individuals involved in the street level and mid-level distribution of narcotics, prostitution and vices. Your affiant has been involved in numerous narcotics investigations and is knowledgeable in the means and methods used by persons and groups to purchase, transport, store, distribute and cultivate narcotics and has firsthand experience in these methods by working in an undercover capacity dealing directly with drug dealers.

Your Affiant has also conducted investigation into the illegal purchases of firearms and has firsthand knowledge that the use of cell phones and social media platforms are used to facilitate and complete the sale of firearms/components and accessories and narcotics.

Throughout this investigation and others, I have become familiar with how illegal gambling establishments are operated. I have overseen and have been a part of undercover operations inside gambling dens and reviewed hours of recorded video from undercover operations at such establishments.

The following is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, interviews, database and public records checks, searches, and other investigations. Since this affidavit is for a limited purpose, I have not included every fact that I know about this investigation. I set forth only facts necessary to establish probable cause.

## APPLICABLE COLORADO LAW

game or by that person's partners, affiliates, subsidiaries, agents, or contractors; except that the term does not include bona fide amusement devices, as authorized in [CRS] 12-47-103(30), that pay nothing of value, cannot be adjusted to pay anything of value, and are not used for gambling."

D.  Among other things, a "simulated gambling device" includes a "device that functions as, or simulates the play of, a slot machine, where results are determined by reason of the skill of the player or the application of the element of chance, or both."

E.  "Sweepstakes" means "any game, advertising scheme or plan, or other promotion that, with or without payment of any consideration, allows a person to enter to win or become eligible to receive a prize."

F.  "Prize" means a gift, award, gratuity, good, service, credit, or anything else of value, including a thing of value for a "gain" as defined in section 18-10-102 (1), that may be transferred to an entrant, whether or not possession of the prize is actually transferred or placed on an account or other record as evidence of the intent to transfer the prize. "Prize" does not include:

i.  Free or additional play;

ii.  Any intangible or virtual award that cannot be converted into money, goods, or services; or

iii.  A paper or electronic coupon, whether issued to a player as a single ticket or token or as multiple tickets or tokens, that is won in return for a single play of a device; has a value that does not exceed the equivalent of twenty-five dollars; cannot be exchanged or returned for money, monetary credits, or any financial consideration; and cannot be used to acquire or exchanged for any product that is, contains, or can be used as a constituent part of or accessory for: Alcohol beverages; Tobacco, tobacco products, marijuana, or smoking; or Firearms or ammunition.

6.  CRS § 18-10.5-103 states that "[a] person commits unlawful offering of a simulated gambling device[, a class 3 misdemeanor,] if the person offers, facilitates, contracts for, or otherwise makes available to or for members of the public or members of an organization or club any simulated gambling device where: The person receives, directly or indirectly, a payment or transfer of consideration in connection with an entrant's use of the simulated gambling device, admission to premises on which the simulated gambling device is located, or the purchase of any product or service associated with access to or use of the simulated gambling device, regardless of whether consideration in connection with such use, admission, or purchase is monetary or nonmonetary and regardless of whether it is paid or transferred before the simulated gambling device is used by an entrant; and [a]s a consequence of, in connection with, or after the play of the simulated gambling device, an award of a prize is expressly or implicitly made to a person using the device."

## COLORADO HOUSE BILL 1234 (HB1234)

Colorado House Bill 1234 (HB1234), now codified at CRS § 10-18.5-101, *et seq.*,

changed Colorado's gambling law. As described in CRS § 10-18-101, *et seq.*, exempts from the definition of "gambling" among other things, "bona fide contests of skill." CRS § 18-10-102(2). HB1234 added definitions for "electronic gaming machine" and "simulated gambling device" for which the exception from the definition of gambling for "bona fide contests of skill" does not apply. In other words, under HB1234, whether a simulated gambling devices is a game of skill, a game of chance, or both, does not matter under the law.

A Municipal adoption of State Statute was adopted by the City of Pueblo under City Ordinance 11-1-901 through 11-1-904 Provisions and Prohibitions with respect to certain gaming and gambling devices, which also includes the seizure of gambling devices and proceeds.

## INVESTIGATION OVERVIEW

The Pueblo Police Department, Special Investigations Division began an investigation into several Pueblo Colorado businesses that are suspected in engaging in illegal gambling by the use of different simulated gambling devices (electronic gaming machines) inside their business establishments, within City limits. This investigation included support from both the FBI, IRS and HSI and the Special Agents assigned to each.

Investigators identified several current and open establishments where the use of electronic gaming are being used to conduct gambling by a person, involving the playing of a machine. The investigation uncovered that a player would create a user profile (entrant) and deposit USD to be able to play on an electronic gambling machine. These establishments offer gaming platforms whereby successful play of the platforms can provide cash winnings. If the entrant would win any of the game/s the winnings would be displayed on the user's profile. The user would then visit the cashier and withdraw the winnings in a monetary (USD) value.

I submit there are numerous versions of games offered by businesses with differing rules, playstyle, and potential winnings, but all provide the entrant with the possibility of cash winnings and therefore are illegal according to Colorado State law.

Our investigation revealed that the establishment's business license through the City of Pueblo Finance Department, claimed that the nature of their business were: "Internet sale for public use, no product sale", "Sale of products, goods and services", and "Amusement gaming center", amongst others, but that this investigation has revealed these establishments are illegal gambling businesses. As described herein, the investigation has also revealed that numerous such illegal gambling businesses have begun operating throughout Colorado.

Colorado House Bill 1234 (HB1234), now codified at CRS § 10-18.5-101, *et seq.*, changed Colorado's gambling law. As described in CRS § 10-18-101, *et seq.*, exempts from the definition of "gambling" among other things, "bona fide contests of skill." CRS § 18-10-102(2). HB1234 added definitions for "electronic gaming machine" and "simulated gambling device" for which the exception from the definition of gambling for "bona fide contests of skill" does not apply. In other words, under HB1234, whether a simulated gambling devices is a game of skill, a game of chance, or both, does not matter under the law.

## MARCH 7^(TH) 2025 UNDERCOVER OPERATION EAGLES #3367 704 ELMHURST

Special Investigations Detectives entered the Eagles #3367 at approximately 1716 hours in a undercover capacity and will referred to as (UC's 1,2,3) in this report. Once inside UC's were informed the games were busy and they were for members only. UC's were able to put their name on a white board located near the front door of the gaming room, there was also an ATM located near the white board.

At approximately 1830 hours it was the UC's turn to play the games. Once they entered the room their were electronic gaming devices on all side of the walls in the gaming room. There were several other individuals inside of the room actively playing games as well as consuming alcoholic beverages. The front the games had the name of "Patriot Contests & Games". Above the gaming machine was another flashing sign that stated "Try Your Skill".

The following events were from what occurred during the playing of the games from the UC's.

On 03-07-25 at approximately 1718hrs UC's, went to 704 Elmhurst, Steel City Eagles #3367 to investigate alleged gambling violations. It has been reported this establishment has illegal gaming machines, has been warned they are illegal, and needed to be removed but refuse to do so.

The Steel City Eagles is a membership only establishment, Once UC 1 is an active member at an establishment outside of the City of Pueblo and used my membership for entry into this location.

Upon entry with the UC's the initial plan was for them to play the machines in order to obtain evidence the gaming machines did in fact operate as slot machines found in legalized gaming areas such as Blackhawk CO, and Cripple Creek CO, and to see if we would be paid out amounts over 25 dollars.

Once inside the establishment UC1 asked a male bartender if the games were up and running in the back room and pointed down a hallway on the east side of the building.  The male said the games were for members only. We walked back to the room where the games were and found 8 standup machines against the wall with patrons at the machines operating them while drinking alcoholic beverages.

These games were on the west and north walls.  The east wall had 3 other games sitting on a shelf type table that patrons would sit at to play and on the south wall was a white board and an ATM.

All games had instructions on how to access the games with a login as well as a place to put cash into the machine in order to play.

By the entrance door was a white board where patrons would write their names showing who was next up for a machine.

UC 1 placed thier name on the whiteboard in order to secure a place in time to operate one of the games.

UC 1 was able to sit down at game number 8 at approximately 1830hrs. UC 1 had to create an account by depressing the "register" button in the lower left part of the screen.  A patron sitting next to me showed me how to create the account.

Once an account was created, UC 1 was able to log in where UC 1 had access to approximately 10 games to play. UC 1 chose a game called Wicked Hot Fortunes to play, it loaded, and UC 1 inserted 20 dollars into the machine initially. When the money was entered into the machine it showed UC 1 had 2000 points on my initial 20 dollars, then another 2000 points was added for a total of 40 dollars after UC 1 put in another 20 dollars.

Just like in Cripple Creek you can hit "max bet", and the machine will bet the max allowed for the machine, which was $4.40 per spin. On the first spin the 5th reel showed 6 characters divided by a bar with three above the bar and three below the bar with two "select" buttons next to each group of three and a timer between the buttons.

UC 1 only had a certain amount of time to touch one of the select buttons. UC 1 saw one of the select buttons was flashing and had the same symbols as the machine did, so UC 1 depressed that button. The other select button had characters that were fruits. UC 1 put a total of 60 dollars into the first game then switched to another game by hitting the home button on the top left of the screen. UC 1 then chose another game to play and put in another 20 dollars. On this game UC 1 was able to play the bonus round and won 33.00 dollars, at this point UC 1 cashed out.

In order to cash out UC 1 had to log out of the machine then go see the bar tender and they entered their Eagles membership number into a computer which pulled up their winnings. Once the winnings showed on the screen the bartender paid out their winnings which amounted to 33.00 dollars from the bonus round and 11.00 dollars they still had in the bank.

The game functioned much like a slot machine in Cripple Creek Colorado where gaming is legal.

UC 1 was able to adjust their bet, had a current count as to how much money UC 1 had access to for betting, and when I hit the "play" button the reels spun just like a game in Cripple Creek.

Once the winnings were collected, they left the Eagles. It was brought to UC 1's attention by UC 2 that they overheard a male in the bar telling other patrons he had won over 300 dollars while we were there.

The $44 USD from the first operation was returned to the Pueblo Police Department and the recording devices were given to the Case Agent, which were tagged into the Property and Evidence Section at the Pueblo Police Department.

## PHYSICAL VIRTUAL SLOT MACHINES

704 Elmhurst Pl Steel City Eagles operates virtual slot machines which customers purchase credits by inserting cash into these machines and use those credits to play the virtual slot machines in the premises. Customers can continue to pay money for more credits to continue to try and win money from the virtual slot machines.

## VIRTUAL SLOT MACHINE TABLES ARE NOT GAMES OF SKILL

Colorado House Bill 1234 (HB1234), now codified at CRS § 10-18.5-101, *et seq.*, changed Colorado's gambling law.  As described in CRS § 10-18-101, *et seq.*, exempts from the

they offer virtual slot machines to customers and allows for winnings to be dispensed for cash. UC detectives were able to win money totaling $33 USD further more indicates the games located inside the establishment are consistent in violation of PMC 11-1-901 through 11-1-904, and therefore illegal to possess and engage in transaction. Given the statement made by a patron to a UC that they had won over $300 USD.

## CONCLUSION

Based on our current investigation of illegal gambling where a Under Cover (UC) Detective established an account as an entrant (player) deposited USD and played on an electronic gaming machine/ simulated gambling device based on a virtual slot machine table, I have reason to believe that the business at 704 Elmhurst Pl Steel City Eagles #3367 is operating an illegal gambling establishment, per Pueblo Municipal Code 11-1-901 through 11-1-904, Colorado Revised Statutes (C.R.S.) § 18-10-107 and Colorado HB 1234.

The businesses have continued to operate even after they have been previously informed that the games were illegal.

Based on the investigation I submit that a search of the premise at 704 Elmhurst Pl Steel City Eagles #3367 may produce further evidence of gambling and that a seizure of all gambling devices to include proceeds, instruments, and other things used for the purpose of gambling be confiscated per City of Pueblo ordinance 11-1-904. I also submit that the seizure of security cameras and electronic recording and storage devices may also provide video evidence of illegal gambling taking place at the establishment.