**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03588-GPG-KAS

TREY FRANZOY, an individual; PATRIOT CONTEST & GAMES, LLC, a Wyoming limited liability company; and CHARLIE CHEDDA'S, LLC, a Wyoming limited liability company,

      Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado Division of Gaming, Colorado Department of Revenue, and in his individual capacity; MICHAEL PHIBBS, in his individual capacity; DANIEL J. HARTMAN, in his individual capacity; KIRSTEN GREGG, in her individual capacity; CITY OF GRAND JUNCTION, COLORADO; CITY OF PUEBLO, COLORADO; and CITY OF COLORADO SPRINGS, COLORADO,

      Defendants.

---

## PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FED. R. CIV. P. 59(E)

---

Plaintiffs respectfully move under Federal Rule of Civil Procedure 59(e) to alter or amend the Final Judgment (Doc 79) entered June 8, 2026. This Motion is timely. It is filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). As the Tenth Circuit requires, a party seeking to amend after judgment must first ask the Court to reopen the case and then ask for leave to amend. Plaintiffs take both steps now. Contemporaneously with this Motion, Plaintiffs file a separate Motion for Leave to File a Second Amended Complaint under Rule 15(a). The two distinct forms of relief are presented in separate motions in accordance with Civ. Practice Standard 7.1A(a)(5).

1

This Motion asks the Court to reopen this case so that Plaintiffs may cure the pleading defects the Court identified. The Court dismissed on grounds that ran Defendant by Defendant, and in describing the operative complaint it wrote that the pleading was "a poorly structured kitchen sink of allegations," that the Court had "attempted to discern" "which claims apply to which Defendants" "to the best of its ability," and that the fault lay in the failure to plead a "short and plain statement" under Rule 8(a). Doc 78 at 2 n.1. The same footnote records that the operative complaint was "significantly lacking in context and details that would enable the Court to properly understand the claims asserted." Doc 78 at 2 n.1. The cured pleading, attached to Plaintiffs' contemporaneously filed Rule 15 motion as Exhibit 1, answers both the count-specific grounds and that structural criticism. It supplies the context and details whose absence the Court identified. It pleads one Defendant per count. Each count incorporates only the shared background and that Defendant's own facts. And it narrows further than discipline alone requires. It drops Grand Junction and every State Defendant—Schroder, in both capacities, along with Hartman, Phibbs, and Gregg—and proceeds against the two municipalities only, on three counts, in 61 paragraphs. The contemporaneously filed Rule 15 motion clearly and thoroughly demonstrates, count by count, why no remaining claim is futile. It is the disciplined pleading the Order's own description calls for. But the Court cannot reach Rule 15 until the judgment is reopened, and that is what this Motion seeks.

Reopening is warranted on the manifest-injustice and clear-error prongs of Rule 59(e). Denying the first opportunity to place a concrete cured pleading before the Court,

2

before any Defendant has answered and within the Rule 59(e) period, would terminate

this case on the form of the operative complaint rather than the merits of the cured one.

That is a manifest injustice, and what it would foreclose is not process for its own sake.

The claims the cured pleading presents concern $118,762.11 in operating capital that

Colorado Springs held for more than 23 months and released only 39 days after a court-

ordered return deadline, more than $150,000 in equipment Colorado Springs still holds,

roughly $60,000 in money and machines Pueblo seized from a non-charged owner and

has not returned, and paid-for licenses Pueblo withheld. Judgment on the form of the

pleading would close the courthouse doors on concrete property and business losses

no court has adjudicated on the merits. And two discrete points warrant Rule 59(e)

correction independent of leave to amend. First, the Order rests in one place on a

factual misreading of the pleading. It states that "the City of Pueblo, not the State

Defendants[,] seized Plaintiffs' funds" (Doc 78 at 17), when every funds-seizure

allegation in the operative complaint attributes the seizure to Colorado Springs. Second,

three of the dismissals are jurisdictional under Rule 12(b)(1), and under binding circuit

law a jurisdictional dismissal "must be without prejudice." *Brereton v. Bountiful City

Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006). The Court's single final judgment and

unspecified futility label did not reflect that result.

Rule 59(e) relief is available to "correct clear error or prevent manifest injustice,"

among other grounds. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th

Cir. 2000). Plaintiffs invoke the rule on the manifest-injustice and clear-error prongs.

They ask the Court to correct a manifest factual error and a manifest legal error on the

face of the Order, and to prevent the manifest injustice of denying leave to cure a structural pleading defect the Court itself described, before any Defendant has answered. Plaintiffs do not invoke Rule 59(e) to relitigate any issue the Court decided. Each ground rests on the Order and Judgment themselves: a factual misstatement on the Order's face, the Judgment's silence on the jurisdictional dismissals' without-prejudice character, and the opportunity to cure structural defects the Order was the first to describe.

Reopening under Rule 59(e) is the prerequisite the Court must reach first. Once a final judgment enters, the filing of an amended complaint is not permissible until judgment is set aside or *vacated* pursuant to Fed. R. Civ. P. 59(e) or 60(b). *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005). A party seeking to amend after dismissal "must first move to reopen the case under Fed. R. Civ. P. 59(e) or 60(b) and then file a motion under Fed. R. Civ. P. 15 for leave to amend." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185–86 (10th Cir. 1999); accord *Combs v. PricewaterhouseCoopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004). The contemporaneously filed Rule 15 motion supplies the second step, but it cannot be reached and will require no response from Defendants unless and until the Court grants the relief sought here and reopens the case. If the Court grants this motion, it may inform the Second Amended Complaint's two Defendants when their objections to the motion for leave to amend will be due.

4

**ARGUMENT**

**I.     DENYING LEAVE TO CURE THE STRUCTURAL PLEADING DEFECT THE COURT DESCRIBED WOULD BE A MANIFEST INJUSTICE THAT WARRANTS REOPENING.**

The pleading defect the Court identified is structural, not substantive. The Court described the operative complaint as "a poorly structured kitchen sink of allegations," wrote that it had "attempted to discern" "which claims apply to which Defendants" "to the best of its ability," and attributed any misreading to the failure to plead a "short and plain statement" under Rule 8(a). Doc 78 at 2 n.1. Under Rule 8, it is "particularly important" in a § 1983 case naming multiple government defendants "that the complaint make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008). A structural criticism of that kind is, by its nature, an invitation to replead with the specificity the rule demands. The Court denied further amendment as "futile" in a single sentence, resting on the observation that "Plaintiffs have already filed one amended complaint," and without any proposed amended pleading before it. Doc 78 at 24 & n.12. But the one prior amendment was filed as a matter of course before any Defendant moved to dismiss and before the Court identified any defect. It was never an opportunity to cure defects the Court had not yet named. This Motion, together with the concrete Second Amended Complaint attached to the contemporaneously filed Rule 15 motion, gives the Court the first opportunity to measure an actual cured pleading against the defects it identified. Denying that opportunity, before any Defendant has answered, within the Rule 59(e) period, and on a futility finding the Court made without any proposed amended

5

complaint before it, would terminate the case on the form of the operative complaint rather than the merits of a cured one. That is the manifest injustice Rule 59(e) exists to prevent, and it stands independent of the two additional grounds below. *Servants of the Paraclete*, 204 F.3d at 1012.

The first footnote says more. It records that the operative complaint was "significantly lacking in context and details that would enable the Court to properly understand the claims asserted," and it argues, "to the extent [the Court] has misconstrued or misunderstood anything," the fault to the pleading's form. Doc 78 at 2 n.1. Plaintiffs seek to cure rather than to relitigate since the futility finding entered in the same Order necessarily assessed claims the Court had just described itself as unable to properly understand. The premise on which the Order proceeded illustrates the risk. The Order frames this action as one arising from "disputes regarding whether gambling operation was occurring," Doc 78 at 2, and reasons that gambling "falls into a category of 'vice' activity," Doc 78 at 13. The pleading's central, verifiable allegations run the other way. An independent gaming laboratory examined Plaintiffs' configuration and reported it to be a game of skill, not chance; an elected District Attorney agreed not to prosecute it; and the State's own gaming agency conceded in writing that it could not tell a lawful skill contest from a prohibited gambling device. Whether that distinction ultimately prevails is a merits question for another day. The narrow point here is that the characterization on which the Order proceeded—gambling, a vice—is the characterization Plaintiffs' claims contest, and a pleading the Court can "properly

understand" is the condition for resolving that contest accurately. Rule 59(e) exists to prevent a final judgment from foreclosing that opportunity.

This basis for reopening does not depend on either additional ground. The structural Rule 8 cure is reason enough to reopen the case so that the Court may, on the contemporaneously filed Rule 15 motion, measure the cured pleading against the standard for leave to amend. The two that follow are additional, freestanding grounds for amending the judgment.

## II.     THE ORDER RESTS IN PART ON A MANIFEST ERROR OF FACT.

The Order rejected Plaintiffs' prolonged-seizure theory, in the section addressing the State Defendants, on the ground that "the complaint states that the City of Pueblo, not the State Defendants[,] seized Plaintiffs' funds." Doc 78 at 17. The face of the operative complaint contradicts that. Every funds-seizure allegation attributes the seizure to Colorado Springs, not Pueblo. Colorado Springs police seized the $118,762.11 (FAC ¶ 28). The Colorado Springs evidence unit delayed its release (FAC ¶ 29). Colorado Springs retained the equipment (FAC ¶ 30). And the operative complaint alleges that the El Paso County court ordered Colorado Springs to return the seized funds (FAC ¶ 57). The Pueblo allegations concern cease-and-desist letters, license denials, an ordinance, and a 2025 enforcement action. None alleges a seizure of Plaintiffs' funds. The Order appears to have inadvertently attributed the funds seizure to Pueblo. The Order's own factual recitation confirms as much: it attributes the seizure to Colorado Springs, in a section titled "Colorado Springs Seizure." Doc 78 at 3.

7

A factual misstatement contradicted by the record, which the court used as a reason to reject a theory, is a "clear error" correctable under Rule 59(e). *Servants of the Paraclete*, 204 F.3d at 1012.

Plaintiffs are candid about how much weight this point carries. The misreading appears in the qualified-immunity discussion of the State Defendants, where the Court's operative holding was that the asserted rights were not clearly established. That holding does not turn on which city held the money. Correcting the misattribution would not, standing alone, disturb that holding. Plaintiffs raise it because it is concrete proof that there was at least one misreading, which is the risk the Court's first footnote identified. It corroborates that a shorter, claim-by-defendant complaint warrants the closer review the Court can give once it reopens the case. It supports the reopening. It is not offered as a freestanding basis for reinstating any claim.

## III.    THREE DISMISSALS ARE JURISDICTIONAL AND MUST BE WITHOUT PREJUDICE.

Three of the dismissals rest on Rule 12(b)(1), not the merits. The first concerns Pueblo (Article III standing and redressability, Doc 78 at 22–24). The second concerns Schroder in his official capacity (Eleventh Amendment and *Ex parte Young*, Doc 78 at 17–19). The third concerns the Grand Junction sign-permit theory (redressability, Doc 78 at 10–11). Yet the Court entered a single final judgment "in favor of Defendants" and denied leave as "futile," without specifying that the jurisdictional dismissals were without prejudice. That is legal error under binding circuit law. If the answer is that the Judgment nowhere says "with prejudice," that is the defect, not the answer: an unqualified judgment for Defendants, coupled with an unexplained futility finding, reads as a merits

8

adjudication, and the without-prejudice character of a jurisdictional dismissal should appear on the face of the Judgment.

A jurisdictional dismissal carries a fixed consequence. "[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice." *Brereton*, 434 F.3d at 1216. "Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice." *Id.* And the futility label does not change the result. "A denial of leave to amend to repair a jurisdictional defect, even on futility grounds, does not call for a dismissal with prejudice." *Id.* at 1219. The reason is jurisdictional in the strict sense. "[O]nce a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim." *Id.* at 1217.

Plaintiffs disclose the limit *Brereton* places on them, as candor to the tribunal requires. *Brereton* itself affirmed a futility-based denial of leave, and it holds that a standing dismissal, even without prejudice, carries issue-preclusion effect on the standing question actually decided. *Id.* at 1219 & n.4. Plaintiffs therefore do not contend that relabeling the judgment, by itself, revives the standing claims. Reviving the Pueblo claims requires pleading materially different facts on redressability, the very question Plaintiffs lost, and the Second Amended Complaint attached to the contemporaneously filed Rule 15 motion does that; the futility analysis in that motion addresses it. Plaintiffs do not re-assert the Schroder official-capacity claim or the Grand Junction sign-permit theory in the proposed pleading. As to those dismissals the correction still matters, because the without-prejudice character of a jurisdictional dismissal is fixed by law and

9

should appear on the face of the Judgment. *Brereton* supplies the narrow, mechanical point. The jurisdictional dismissals cannot stand as merits, with-prejudice terminations. Plaintiffs ask the Court to amend the judgment to specify that the Pueblo, Schroder official-capacity, and Grand Junction sign-permit dismissals are without prejudice and were not adjudicated on the merits.

The cross-appeal rule confirms the point. Absent a cross-appeal, an appellate court "[is] precluded from altering the judgment to benefit a nonappealing party," and that rule "bars [it] from altering a dismissal without prejudice to one with prejudice." *Sanchez v. Torrez*, 173 F.4th 1202, 1225 n.3 (10th Cir. 2026) (citing *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). The without-prejudice status is the least the law requires for these jurisdictional dismissals, and the Court should make the judgment say so. Correcting the prejudice label is necessary but not sufficient. It protects Plaintiffs' position on the jurisdictionally dismissed claims without reaching the cure. The reopening Plaintiffs seek rests on the independent manifest-injustice ground set out above, which relabeling does not provide and does not replace.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court (1) vacate the Judgment and reopen the case so that leave to amend, sought in the contemporaneously filed Rule 15 motion, may be considered; (2) in any amended order or judgment, correct the factual misattribution on page 17 of the Order (Doc 78 at 17); (3) specify that the dismissals of Pueblo, of Schroder in his official capacity, and of the

Grand Junction sign-permit theory rest on jurisdictional grounds and are without

prejudice; and (4) grant such further relief as the Court deems just.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr., Bar No. 43298
Raymond K. Bryant, Bar No. 42586
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(720) 515-6165
ed@rightslitigation.com
raymond@rightslitigation.com
Attorneys for Plaintiffs

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel conferred with

counsel for all Defendants by email between June 24 and June 30, 2026, describing the

relief sought in this Motion and in Plaintiffs' contemporaneously filed companion motion

and providing the then-proposed Second Amended Complaint, its exhibits, and a

comparison version for review. Undersigned counsel considered the feedback

Defendants' counsel provided. The proposed Second Amended Complaint filed today

further narrows the draft provided during conferral. It drops all claims against the State

Defendants and proceeds against the Cities of Colorado Springs and Pueblo only, and

undersigned counsel provides the final version to all counsel on the date of this filing.

The City of Grand Junction takes no position. At least one Defendant will oppose.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.


<u>*s/ Edward C. Hopkins Jr.*</u>
Edward C. Hopkins Jr.