IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03588-GPG-KAS

TREY FRANZOY, an individual; PATRIOT CONTEST & GAMES, LLC, a Wyoming
limited liability company; and CHARLIE CHEDDA'S, LLC, a Wyoming limited liability
company,

      Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado
Division of Gaming, Colorado Department of Revenue, and in his individual capacity;
MICHAEL PHIBBS, in his individual capacity; DANIEL J. HARTMAN, in his individual
capacity; KIRSTEN GREGG, in her individual capacity; CITY OF GRAND JUNCTION,
COLORADO; CITY OF PUEBLO, COLORADO; and CITY OF COLORADO SPRINGS,
COLORADO,

      Defendants.

---

**PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
UNDER FED. R. CIV. P. 15(A)**

---

This Motion is filed contemporaneously with, and is contingent upon the Court's

granting of, Plaintiffs' Motion to Alter or Amend the Judgment Under Rule 59(e), filed

today. Because a final judgment has entered, the Court may not entertain leave to

amend until the judgment is set aside or *vacated*. *Tool Box, Inc. v. Ogden City Corp.*,

419 F.3d 1084, 1087 (10th Cir. 2005); *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*,

181 F.3d 1180, 1185–86 (10th Cir. 1999); *Combs v. PricewaterhouseCoopers LLP*, 382

F.3d 1196, 1205 (10th Cir. 2004). Plaintiffs nonetheless file this Motion now, with the

proposed Second Amended Complaint attached as Exhibit 1, the comparison version

1

required by D.C.COLO.LCivR 15.1(b) attached as Exhibit 2, and the Declaration of Trey

Franzoy attached as Exhibit 3, so that the Court may measure any futility objection

against the actual proposed pleading "as amended." *Anderson v. Suiters*, 499 F.3d

1228, 1238 (10th Cir. 2007); *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020).

Should the Court grant the Rule 59(e) motion and reopen the case, Plaintiffs

respectfully request leave to file the attached Second Amended Complaint.

The proposed pleading cures the defect the Court identified. It pleads one

Defendant per count and asks only for relief that redresses that Defendant's own

conduct. No count attributes one Defendant's act to another. Each count incorporates

only the shared background (SAC ¶¶ 12–15) and that Defendant's own numbered fact

paragraphs, never "all preceding paragraphs." It is more focused than the operative

complaint. It narrows to the strongest claims, dropping Grand Junction and every State

Defendant—Schroder in both capacities, along with Hartman, Phibbs, and Gregg—and

proceeding against the two municipalities only, on three counts, in 61 paragraphs, and it

demonstrates count by count why no remaining claim is futile. It is the disciplined

pleading the Court's Order called for, and it defeats futility on each count the Court

should permit Plaintiffs to refile.

When the Court reaches Rule 15, leave should be granted absent "undue delay,

bad faith . . . repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice . . . [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182

(1962). After judgment, however, Rule 15's "freely given" presumption is reversed. *Tool

Box*, 419 F.3d at 1087–88.

Futility is measured against the proposed pleading "as amended," meaning "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson*, 499 F.3d at 1238; accord *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). A district court's refusal to grant leave on futility grounds is reviewed de novo. *Combs*, 382 F.3d at 1205; *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010). Attaching the proposed pleading is what permits that de novo review. Attaching the proposed pleading gives the Court a concrete text against which to measure futility. *Castanon*, 976 F.3d at 1144. Plaintiffs attach the proposed Second Amended Complaint as Exhibit 1 for that reason. The Order's futility assessment necessarily addressed the operative complaint as it stood. It did not, and could not, evaluate the narrowed and repaired pleading now before the Court. The Order itself supplies the reason that matters most: its first footnote records that the operative complaint was "significantly lacking in context and details that would enable the Court to properly understand the claims asserted," and it charges any resulting misconstruction to the pleading's form. Doc 78 at 2 n.1. A defect the Court describes in those terms is one that context and detail can cure, and the attached pleading supplies both. The fair course under Rule 15's liberal standard, reached through the Rule 59(e) gateway, is to measure futility against a pleading the Court can properly understand before final judgment closes the courthouse doors on Plaintiffs' concrete property and business losses. Because this Motion cannot be considered unless the Court grants the contemporaneously filed Rule 59(e) motion, Plaintiffs recommend and do not oppose an order deferring a response deadline for this Motion until the Court rules on that motion.

**ARGUMENT**

## I. PLAINTIFFS MEET THE HIGHER STANDARD THAT APPLIES AFTER JUDGMENT.

After judgment, the Rule 15 presumption in favor of amendment is "reversed."

*Tool Box*, 419 F.3d at 1087–88. Plaintiffs meet that higher standard because the

proposed pleading repairs the same claims in direct response to the Court's stated Rule

8 reasons, rather than advancing a new theory withheld from an earlier round.

This is not an argument that could have been raised before judgment. Nor is it a

"repeated failure to cure." *Foman*, 371 U.S. at 182. The proposed pleading reorganizes

and narrows the existing dispute and pleads the concrete facts necessary to address

the Court's jurisdictional and Rule 8 concerns. Plaintiffs amended once, as a matter of

course, before any Defendant moved to dismiss and before the Court named any

defect. That one prior amendment predated every motion to dismiss and predated the

Court's identification of the defects, so it was never an opportunity to cure the defects

the Court later named, and it blunts any *Foman* "repeated failure to cure" concern. The

factor that weighs against a plaintiff who has been given, and wasted, prior chances to

fix a known problem does not apply to a plaintiff fixing a problem the first time the court

has named it. There is no undue delay. The Rule 59(e) motion is filed within the Rule

59(e) period. There is no bad faith, and no prejudice to Defendants, who have not

answered and face the same dispute in a shorter, clearer pleading.

4

**II.    AMENDMENT IS NOT FUTILE BECAUSE THE ATTACHED COMPLAINT CURES EACH IDENTIFIED DEFECT OR REMOVES THE CLAIM, DEFENDANT BY DEFENDANT.**

Futility is measured against the proposed Second Amended Complaint "as amended," and the Court has not yet seen it. *Anderson*, 499 F.3d at 1238. The cured pleading defeats futility on each count the Court should permit Plaintiffs to refile.

**A.  The structural Rule 8 defect is cured across the whole pleading.**

The Court described the operative complaint as "a poorly structured kitchen sink of allegations" and attributed any misreading to the failure to plead a "short and plain statement" under Rule 8(a). Doc 78 at 2 n.1. Under Rule 8, it is "particularly important" in a Section 1983 case naming multiple government defendants "that the complaint make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008). The proposed pleading is built to that standard of clarity and detail. It pleads one Defendant per count. Each count incorporates only the shared background (SAC ¶¶ 12–15) and that Defendant's own numbered fact paragraphs, never "all preceding paragraphs." That is the cure Tenth Circuit pleading law prescribes.

The cure also reaches the substance. The Order frames this action as one arising from "disputes regarding whether gambling operation was occurring," Doc 78 at 2, and reasons that gambling "falls into a category of 'vice' activity," Doc 78 at 13. That framing rests on the operative pleading's failure to make its central distinction visible. The proposed pleading puts the distinction where it cannot be missed: its common background pleads the independent laboratory's finding that the Farley-defined

configuration is a game of skill, not chance; the elected District Attorney's agreement not to prosecute that configuration; and the State gaming agency's own written concessions that it could not tell a lawful skill contest from a prohibited gambling device. SAC ¶¶ 12–15. Plaintiffs' claims are not claims of a right to gamble. They are property, process, and enforcement claims by businesses whose non-gambling character is the pleaded, verifiable crux of the case. A court measuring futility against the cured pleading confronts that question with the context the Order found lacking.

### B. Pueblo, where Patriot's own injury and Pueblo's own enforcement authority cure the redressability defect.

The Court found that the injuries pleaded belonged to the fraternal host organizations, not to Plaintiffs, and that Patriot's downstream economic injury was not redressable because re-hosting decisions lay with the hosts. Doc 78 at 22–24. The proposed pleading re-centers the Pueblo count, now Count 3 of the proposed pleading, on Patriot's own, direct injuries. Pueblo accepted Patriot's payment for device-license stickers and then withheld the stickers Patriot had paid for, and Pueblo's enforcement destroyed Patriot's own revenue-share contracts with its Pueblo host venues. SAC ¶¶ 48, 52, 56. Those are Patriot's injuries, not the hosts'. Pueblo also seized Franzoy's machines and the money in them during the April 5, 2025, search of Steel City Eagles, and kept that property without charging him and without providing him notice or any procedure through which a non-charged owner can seek its return, a further direct injury Pueblo can redress by returning the property. SAC ¶¶ 51, 53, 56; Franzoy Decl. ¶¶ 7–9 (Exhibit 3). Standing does not depend on that seizure; the withheld paid-for licenses and

Patriot's own destroyed contracts each independently establish standing against

Pueblo. SAC ¶ 56.

Those injuries are cognizable and redressable through Pueblo's own conduct.

Downstream economic injuries to a business in the chain of a regulated market can

establish injury in fact. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 384 (2024).

And where the defendant has its own special authority to enforce the challenged law,

shared enforcement authority does not defeat redressability. *Sanchez v. Torrez*, 173

F.4th 1202, 1216–17 (10th Cir. 2026). An order barring Pueblo from withholding

Patriot's paid-for licenses, requiring Pueblo to return Franzoy's property or provide a

prompt, neutral process to test its retention, and barring future enforcement of

Ordinance No. 10703 against Plaintiffs' operation of the Farley-defined configuration

absent neutral, published criteria redresses Plaintiffs' injuries through Pueblo's own

conduct, without reference to any third party's choice. SAC ¶¶ 57, 61.

The Court's own redressability authority confirms the cure rather than defeating

it. The Court found Patriot's downstream injury not redressable because, where relief

"depends upon the decision of an independent third party," a plaintiff must plausibly

allege that the third party "will likely react in predictable ways." *Citizens for

Constitutional Integrity v. United States*, 57 F.4th 750, 761 (10th Cir. 2023); Doc 78 at

24. That rule does not reach the direct injuries on which the cured count rests, because

the withheld stickers, the destroyed contracts, and the seized property are deprivations

Pueblo imposed by its own act and the requested order runs against Pueblo's own

authority, so no third party stands in the causal chain. And to the extent any lost-

contract revenue turns on how Pueblo's host venues respond, the Supreme Court recently held that a plaintiff need not prove complete redress or supply third-party affidavits because it is enough that regulated third parties will predictably react in commonsense ways to relief. *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 114–22 (2025). SAC ¶ 57.

*Younger* abstention does not defeat this count, and the proposed pleading is avoids supplying a hook for it. *Younger* is confined to three exceptional categories, and its civil-enforcement category characteristically concerns state-initiated, quasi-criminal proceedings brought to sanction the federal plaintiff. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013). Plaintiffs are not the target of any such proceeding. Plaintiffs themselves initiated the pending Pueblo County action seeking a determination that their machines comply with the law; Pueblo did not initiate it and did not compel their participation. SAC ¶ 50. Pueblo's April 5, 2025, enforcement action charged individuals other than Plaintiffs, and no Plaintiff was charged under the ordinance before this civil action began. SAC ¶ 51. That Pueblo seized Franzoy's property during that search, and continues to hold it as evidence, Franzoy Decl. ¶ 9 (Exhibit 3), does not change the analysis. The count seeks the property's return or, at a minimum, a prompt and neutral process to test the lawfulness of its continued retention, relief that respects any legitimate evidentiary need and neither enjoins nor interferes with any pending proceeding. SAC ¶¶ 53, 61.

C. **Colorado Springs, where an affirmative final-policymaker theory and the established-procedure exception to *Parratt* repair the *Monell* counts.**

The Court found no widespread custom and no final-policymaker decision or delegation. Doc 78 at 20–21. The proposed pleading answers the final-policymaker point affirmatively rather than conditionally. Whether an official is a final policymaker is a question of state and local law, turning on whether the official is meaningfully constrained by others' policies, whether the official's decisions are subject to meaningful review, and whether the decision falls within the official's grant of authority; any review must be meaningful rather than merely hypothetical. *Randle v. City of Aurora*, 69 F.3d 441, 447–49 (10th Cir. 1995). Construing this same municipal code, the Tenth Circuit has held that the Colorado Springs Chief of Police was the City's final policymaker for the departmental function there at issue, because administrative review of the Chief's decisions is illusory rather than mandatory. *Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir. 1989). Colorado Springs City Code § 8.1.104 assigns that same Chief responsibility for the care and condition, and the holding and return, of property in the Department's custody, and the evidence personnel who set and reset the return date acted as the Chief's designees under that grant. SAC ¶¶ 24–26, 34. A single decision by the official with final policymaking authority over the relevant subject matter is an act of the municipality, and no pattern is required. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Plaintiffs plead that single-final-decision theory and, in the alternative, the City's own established property-return practices, of which its July 2023 Property Return Office reflects the City's acknowledged awareness. SAC ¶¶ 27–28, 35. *Connick v. Thompson*,

9

563 U.S. 51, 62–63 (2011), does not narrow either theory. It confines single-incident failure-to-train liability, which the proposed pleading does not assert, and a *Pembaur* final-policymaker decision requires no pattern at all. The alternative established-practice theory is pleaded modestly, to be developed in discovery.

Plaintiffs disclose the controlling adverse authority and confront it. *Praprotnik* holds that the mere exercise of discretion by an employee does not establish municipal policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988) (plurality opinion). The proposed pleading does not rest on evidence-clerk discretion. It rests on a textual delegation of the property-care and property-return function to the Chief, exercised by his designees, and it pleads that no ordinance or mandatory review constrains the Chief's decisions in that area. SAC ¶¶ 25, 34. Whether § 8.1.104 vests final policymaking authority over property-return practices is a question of state and local law; on the face of § 8.1.104, the delegated final authority is at least plausible, which is all the futility inquiry requires.

Count 2 separately answers the post-deprivation-remedy bar the Court did not reach. The availability of a state tort remedy forecloses a procedural-due-process claim only where the deprivation is random and unauthorized. Where instead the deprivation is carried out through an established state procedure by officials the State has clothed with authority to effect it, and the deprivation is foreseeable at a predictable point, predeprivation or prompt post-deprivation process is required, and an after-the-fact tort remedy does not satisfy due process. *Zinermon v. Burch*, 494 U.S. 113, 138–39 (1990); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–37 (1982). The proposed pleading

alleges that the City's retention of Plaintiffs' property was carried out through the Department's established evidence-handling and property-return practices, not a random act, and that the over-retention occurred at the predictable point when the evidence unit continued to hold the currency after the state court ordered its return and the People filed the releases. SAC ¶¶ 18–23, 41–42.

Plaintiffs further disclose adverse forfeiture-process authority bearing on Count 2. *Culley v. Marshall* holds that civil forfeiture of personal property requires a timely forfeiture hearing but not a separate preliminary hearing. 601 U.S. 377, 384–86 (2024). *Culley* does not foreclose Count 2. Count 2 does not seek a preliminary forfeiture hearing; it targets the City's retention of property after a state court ordered it returned and after any forfeiture justification had lapsed, 39 days past the court-ordered deadline. SAC ¶¶ 18–23, 40. The timely forfeiture proceeding *Culley* deems sufficient had already run and ordered return. The defect Count 2 pleads is the absence of any prompt, neutral process to enforce that return.

### D. The foreclosed claims are removed, not repackaged.

Plaintiffs have narrowed the pleading to its most viable claims rather than repackage the ones the Court rejected. They drop Grand Junction entirely, the Defendant whose theories the Court found doctrinally foreclosed. They drop Defendant Hartman, because the only conduct alleged against him was a single May 4, 2023, directive, and a Section 1983 claim resting on that discrete act is time-barred on the face of the pleading.

11

Plaintiffs also drop every remaining claim against the State Defendants. The claim against Phibbs rested on a single email, and the Court found "nothing in the email suggesting" that Phibbs wanted the recipient to sever ties with Plaintiffs. Doc 78 at 16. Plaintiffs do not repackage that claim. The claims against Gregg and against Director Schroder, individual and official capacity alike, are dropped as well, not repleaded elsewhere. The proposed pleading therefore moots the entire qualified-immunity and Eleventh Amendment side of the Order. No immunity question of any kind remains in the case. What remains are two municipal Defendants, three counts, and 61 paragraphs, each count pleaded against a single City on that City's own conduct. Removing the foreclosed, time-barred, and immunity-barred claims, while curing those that remain, is not a futile repeat of the prior pleading; it is the opposite.

## CONCLUSION

For these reasons, if the Court grants Plaintiffs' Motion to Alter or Amend the Judgment under Rule 59(e) and reopens the case, Plaintiffs respectfully request leave under Rule 15(a) to file the proposed Second Amended Complaint attached as Exhibit 1, along with any further relief the Court deems just.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr., Bar No. 43298
Raymond K. Bryant, Bar No. 42586
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(720) 515-6165
ed@rightslitigation.com
raymond@rightslitigation.com
Attorneys for Plaintiffs

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel conferred with counsel for all Defendants by email between June 24 and June 30, 2026, describing the relief sought in this Motion and in Plaintiffs' contemporaneously filed companion motion and providing the then-proposed Second Amended Complaint, its exhibits, and a comparison version for review. Undersigned counsel considered the feedback Defendants' counsel provided and made revisions. The proposed Second Amended Complaint filed today further narrows the draft provided during conferral. It drops all claims against the State Defendants and proceeds against the Cities of Colorado Springs and Pueblo only, and undersigned counsel is providing the final version to all counsel on the date of this filing. The City of Grand Junction takes no position. At least one Defendant will oppose.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.

13