**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-3588-GPG-KAS

TREY FRANZOY, an individual;
PATRIOT CONTEST & GAMES, LLC, a Wyoming limited liability company; and
CHARLIE CHEDDA'S, LLC, a Wyoming limited liability company,

Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado Division of Gaming, Colorado Department of Revenue, and in his individual capacity;
MICHAEL PHIBBS, in his individual capacity;
DANIEL J. HARTMAN, in his individual capacity;
KIRSTEN GREGG, in her individual capacity;
CITY OF GRAND JUDCTION, COLORADO;
CITY OF PUEBLO, COLORADO; and
CITY OF COLORADO SPRINGS, COLORADO,

Defendants.

---

**CITY OF COLORADO SPRINGS'S RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 15(A)**

---

Defendant the City of Colorado Springs ("Colorado Springs") files its response to Plaintiffs' Motion for Leave to File a Second Amended Complaint Under Fed. R. Civ. P. 15(a) (Doc. 81, the "Motion").

## INTRODUCTION

Plaintiffs ask the Court to reopen a final judgment and permit them to file a Second Amended Complaint that repeats the same fatal defects the Court has already identified. The proposed pleading fails for the same reason the Court dismissed the First Amended Complaint:

Plaintiffs still do not allege facts sufficient to state a plausible claim for municipal liability under 42 U.S.C. § 1983 against Colorado Springs. Thus, Amendment would be futile.

The Court dismissed Plaintiffs' claims against Colorado Springs because Plaintiffs failed to plead either the existence of a widespread municipal custom or a final policymaker decision causing their alleged injury. (*See* Doc. 78 at 19-21) The proposed Second Amended Complaint does not cure these deficiencies. Instead, it repackages the same insufficient allegations and adds speculative inferences that do not transform the single instance of delayed property return into municipal policy. Plaintiffs' proposed Claims 1 and 2 both rest on the same flawed theory: that the Colorado Springs Police Department's ("CSPD") retention of Plaintiffs' currency for 39 days after a court-ordered deadline, and its continued retention of equipment, constitutes municipal policy under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

But Plaintiffs still fail to allege facts showing that a widespread custom of delayed property return existed, or that the Chief of Police even knew about, let alone directed or legally ratified, the delayed return of Plaintiffs' property. Because the proposed Second Amended Complaint would be subject to dismissal under Rule 12(b)(6), amendment is futile. The Motion should be denied.

## LEGAL STANDARD

A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). The futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim under Rule 12(b)(6). *Meadows at Buena Vista, Inc. v. Ark. Valley Publ'g Co.*, Civil Action No. 10-cv-02871-MSK-KMT, 2012 U.S. Dist. LEXIS 19234, at *7-8 (D. Colo. Feb. 15, 2012). The Court analyzes the proposed pleading using the same standard as a motion to dismiss,

accepting well-pleaded factual allegations as true and viewing them in the light most favorable to the plaintiff, but only if the proposed claims contain enough facts to state a claim for relief that is plausible on its face. *Id.* Where the party moving for leave to amend fails to explain how the proposed amendment cures the deficiencies the Court identified in dismissing the original complaint, the Court does not abuse its discretion in denying the motion. *K.A. v. Barnes*, 134 F.4th 1067, 1078 (10th Cir. 2025).

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must prove that a municipal employee committed a constitutional violation and that a municipal policy or custom was the moving force behind the constitutional deprivation. *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019). A municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Id.* at 1283. The plaintiff must demonstrate the existence of a municipal policy or custom and a direct causal link between that policy or custom and the injury alleged. *Id.* at 1284.

A municipal policy or custom may take forms including "an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; … the decisions of employees with final policymaking authority; [and] the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Id.* at 1283. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 935 (10th Cir. 2025).

## ARGUMENT

### I. Plaintiffs Fail to Allege the Existence of a Municipal Policy or Custom.

#### A. Plaintiffs Fail to Plead that the Chief of Police Directed, Delegated Final Policymaking Authority Over, or Ratified the Allegedly Unconstitutional Conduct.

Plaintiffs assert that the Chief of Police is the final policymaker for CSPD property-return decisions per Colorado Springs City Code § 8.1.104, and that the CSPD evidence unit's decision to retain Plaintiffs' property beyond the March 13 deadline was therefore an act of municipal policy. (Doc. 81-1 ¶¶ 24-26, 34, 42) But Plaintiffs do not plead facts establishing that (1) the Chief himself decided or directed the evidence personnel to delay the return of Plaintiffs' property, (2) the Chief delegated his final policymaking authority over property-return decisions to CSPD evidence unit personnel, or (3) the Chief ratified the evidence unit's delayed return of Plaintiffs' property, including the basis therefor. Absent these factual allegations, the proposed Second Amended Complaint fails to state a claim against Colorado Springs. *See Waller*, 932 F.3d at 1283.

##### 1. Plaintiffs fail to allege that the Chief of Police decided or directed the evidence personnel to delay returning Plaintiffs' property.

For municipal liability to attach from the decision of a final policymaker, a plaintiff must allege facts showing that "a deliberate choice to follow a course of action [was] made from among various alternatives *by the official or officials responsible for establishing final policy* with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added). Indeed, the unconstitutional action of the employee must be "directed by those who establish governmental policy." *Id.* at 481. *See also Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (A single incident of unconstitutional activity does not amount to a municipal policy unless "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.")

When dismissing Plaintiffs' First Amendment Complaint, the Court found that Plaintiffs' "complaint does not indicate that the Chief of Police had any involvement in the evidence unit's handling of Plaintiffs' property, [or] that the Chief made any decision impacting the evidence unit's handling of Plaintiffs' property …." (Doc. 78 at 21)

Plaintiffs' proposed Second Amended Complaint repeats the insufficient allegations. They allege that "the Chief of Police, or a designee acting on the Chief's behalf, made the decision to withhold Plaintiffs' property and not to return it by the court-ordered deadline." (Doc. 81-1 ¶ 26) But it matters greatly whether the Chief of Police or someone else decided to delay returning Plaintiffs' property. Only if the Chief—the final policymaker for the department—decided to delay the property return may Colorado Springs be liable, because only the Chief's decisions reflect municipal policy. *See Pembauer*, 475 U.S. at 483. Plaintiffs' equivocation on *who* made the decision to delay the return of Plaintiffs' property dooms their claim against Colorado Springs.

Because Plaintiffs do not definitively allege with well-pled facts that the Chief of Police himself decided or directed the evidence unit to delay the return of Plaintiffs' property, Plaintiffs fail to state a municipal liability claim based on the decision of a final policymaker.

**2. Plaintiffs fail to allege that the Chief of Police delegated his final policymaking authority to the evidence unit personnel.**

Based on City Code § 8.1.104, Plaintiffs assert Colorado Springs is liable because CSPD's evidence unit personnel allegedly "possessed the [Chief's] delegated authority to control [the property's] release." (Doc. 81-1 ¶ 41) Code section 8.1.104 states as follows:

> The Chief of Police shall be responsible for the discipline, good order and proper conduct of the Department, for the enforcement of all laws, ordinances and regulations and for the care and condition of the buildings, equipment, apparatus and all other property of the Department. The Chief of Police shall be responsible for assignment of all personnel employed by the Police Department. The Chief of Police shall have the authority to divide the City into geographic areas for the efficient delivery of police services. When this Code requires or authorizes the

> Chief of Police to act, the act may be taken by authorized employees, assistants or designees of the Chief.

(Doc. 92-1, Certified Colorado Springs City Code § 8.1.104) Plaintiffs contend that Code § 8.1.104 makes the Chief of Police the final policymaker for CSPD and that CSPD's evidence unit personnel "exercised" the Chief's authority to make property-return decisions as his "designees." (Doc. 81-1 ¶¶ 25-26, 34) Thus, they assert, Colorado Springs is liable for the evidence unit personnel's decision to delay the return of Plaintiffs' property. (*Id.* ¶ 34)

But Plaintiffs still conflate the Chief's final municipal policymaking authority and CSPD employees' authority to perform their jobs. As City Code section 8.1.104 recognizes, the Chief of Police cannot himself deliver all "police services" to Colorado Springs residents; he must employ personnel whom he authorizes to perform such jobs. (*See* Doc. 92-1, City Code § 8.1.104 ("The Chief of Police shall be responsible for assignment of all personnel employed by the Police Department…. When this Code requires or authorizes the Chief of Police to act, the act may be taken by authorized employees, assistants or designees of the Chief."))

But mere employment and authorization to "deliver[] police services"—i.e., to do their jobs—does not make CSPD employees final policymakers. If it did, every CSPD employee would be a final policymaker; every CSPD employee's conduct would be deemed to be the conduct of Colorado Springs. That's not how municipal liability works. *See Pembauer*, 475 U.S. at 483-84. For the decision of anyone *other than* the final policymaker to bind the municipality, there must be a delegation of final policymaking authority to that person. *See id.*

As this Court recognized in its June 8, 2026 order, "Plaintiffs do not state anywhere in the complaint that the Chief delegated the authority to make municipal policy to the evidence unit." (Doc. 78 at 21) Plaintiffs still don't. To the contrary, Plaintiffs acknowledge in the proposed Second Amended Complaint that "[t]he exercise of discretion by a subordinate is not itself

municipal policy." (Doc. 81-1 ¶ 26) Plaintiffs attempt to hold Colorado Springs vicariously liable, which is insufficient. *See Waller*, 932 F.3d at 1283.

**3. Plaintiffs fail to plead that the Chief of Police ratified the evidence unit's decision and the basis for delaying the return of Plaintiffs' property.**

Lastly, to the extent Plaintiffs attempt to plead municipal liability based on a final policymaker's ratification of subordinates' unconstitutional conduct, they fail. The Court also dismissed this theory in its June 8, 2026 Order, finding "no indication anywhere in the complaint that the Chief approved or even knew of the evidence unit's actions in this case, including their failure to return the funds by the state court's March 13 deadline." (Doc. 78 at 21) The proposed Second Amended Complaint adds only that "[o]n information and belief, the Chief of Police knew of or acquiesced in the Department's continued retention of Plaintiffs' property after the court-ordered deadline." (Doc. 81-1 ¶ 26 (emphasis added))

This conclusory allegation, pled on information and belief, does not cure the pleading deficiency. Plaintiffs do not allege any facts supporting their belief that the Chief knew or approved of the property retention. They do not identify any communication to the Chief, any decision by the Chief, or any facts from which his knowledge or approval might be inferred. Plaintiffs' speculative, conclusory allegation is not entitled to the assumption of truth. *See Frey v. Town of Jackson*, 41 F.4th 1223, 1233 (10th Cir. 2022).

Moreover, even if accepted as true, the allegation fails to state a municipal liability claim against Colorado Springs based on a ratification theory. Ratification requires a final municipal policymaker's conscious and deliberate choice to sanction the unconstitutional act and its rationale; passive acquiescence is insufficient. *See Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997); *Bryson v. City of Okla. City*, 627 F.3d 784, 790 (10th Cir. 2010). Plaintiffs do not allege that the Chief affirmatively approved of the basis of the decision to

delay the return of Plaintiffs' property. The Chief's purported "acquiesce[nce]" in the evidence unit's decision does not amount to ratification.

Plaintiffs allege no facts showing the Chief of Police's approval of any kind, let alone conscious, deliberate approval of the prolonged property retention and the basis for it. Plaintiffs' speculation that the Chief may have known of or acquiesced in the conduct fails to state a plausible claim against Colorado Springs.

**B. Plaintiffs Fail to Plead a Widespread Custom of Delayed Property Return.**

In the alternative, Plaintiffs allege that the constitutional deprivation flowed from the City's established property-return practices. (Doc. 81-1 ¶¶ 41-42) To establish an informal custom, a plaintiff must show that the actions of municipal employees were continuing, persistent, and widespread, and they must demonstrate deliberate indifference to or tacit approval of such misconduct by policymaking officials after notice. *See Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). A custom means an act that, although not formally approved by an appropriate decision maker, has such widespread practice as having the force of law. *Id.*

Plaintiffs allege that the City opened a Property Return Office in July 2023 and acknowledged that community members had faced "challenges" recovering seized property. (Doc. 81-1 ¶ 27) Plaintiffs contend that this acknowledgment gave the City notice of a risk of prolonged deprivation and that the City's property-return practices were a moving force behind the deprivation. (*Id.* ¶ 28)

The Court rejected this theory when it dismissed Plaintiffs' First Amended Complaint, finding that "the complaint does not show that any other individuals faced issues of prolonged property retention and inadequate post-seizure procedures." (Doc. 78 at 20) "At best," the Court found, "the complaint indicates that others faced vague 'challenges' to recovering seized property,

but it does not state what sort of challenges or if those challenges involved prolonged retention/delay." (*Id.*)

The proposed Second Amended Complaint does not cure this deficiency. It pleads the same vague "challenges" without identifying a single similarly situated individual or a single comparable instance of delay. A plaintiff establishes a custom by proffering evidence that similarly situated individuals were mistreated by the municipality in a similar way. *Carney*, 534 F.3d at 1274. Plaintiffs have not done so. The opening of a Property Return Office and a general acknowledgment of unspecified "challenges" do not plausibly allege a widespread custom of prolonged property retention in Colorado Springs.

## II. The Proposed Pleading Does Not Cure the Failure to Allege a Direct Causal Link.

Plaintiffs also have not alleged a direct causal link between any alleged municipal policy or custom and their alleged injuries. The plaintiff must demonstrate that "through its *deliberate* conduct," the municipal action "was the moving force behind the injury alleged." *Lee*, 135 F.4th at 935 (emphasis in original). Where a plaintiff claims that the municipality caused an employee to inflict an injury, "rigorous standards of culpability and causation" must be applied "to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Plaintiffs allege that the City's property-return practices were a moving force behind the deprivation. (Doc. 81-1 ¶¶ 28, 35) But the only factual basis they provide is the opening of the Property Return Office and the acknowledgment of unspecified "challenges." (Doc. 81-1 ¶ 28) Plaintiffs do not allege facts showing that any identified practice or gap in procedure caused the 39-day delay in returning their currency or the continued retention of their equipment. The causal connection Plaintiffs assert is speculative and, thus, fails to state a claim.

## III. Plaintiffs Fail to Allege that a Colorado Springs Employee Violated Plaintiffs' Constitutional Rights.

Even if Plaintiffs had alleged the existence of a municipal policy or custom, their proposed Claims 1 and 2 fail to state a constitutional violation by a Colorado Springs employee. For this independent reason, Plaintiffs' proposed Second Amended Complaint fails to state a claim.

### A. Plaintiffs Fail to Allege a Fourth Amendment Violation (Claim 1).

Proposed Claim 1 alleges that Colorado Springs' retention of property for 39 days after a court-ordered return deadline was an unreasonable seizure under the Fourth Amendment. (Doc. 81-1 ¶ 32) But as Colorado Springs previously argued, here in the Tenth Circuit, the government's prolonged retention of lawfully seized property is analyzed under the due process clause, not the Fourth Amendment. (*See* Doc. 34 at 11-12, citing *Snider v. Lincoln Cty. Bd. of Cty. Comm'rs*, 313 Fed. Appx. 85, 93 (10th Cir. 2008) (unpublished) and *Hicks v. City & Cnty. of Denver*, No. 22-CV-01136-CNS-JPO, 2025 WL 1017679, at *4 (D. Colo. Apr. 4, 2025) (unpublished).) Plaintiffs fail to correct their allegations to align with governing Tenth Circuit law. (*See* Doc. 44 at 6; Doc. 64 at 5-6)

Moreover, Plaintiffs allegations in the proposed Second Amended Complaint still fail to state a plausible due process claim against Colorado Springs. (*See* Doc. 64 at 6-7) Plaintiffs do not allege that the City *had* no legitimate basis for prolonged retention of their property; rather, they allege that "Colorado Springs *identified* no lawful basis for continued retention of [the] property." (Doc. 81-1 ¶ 20 (emphasis added)) But a legitimate basis for Colorado Springs's continued retention of Plaintiffs' property appears in the record. CSPD received the last of the necessary releases from the district attorney's office on March 12, 2025, the day before the court's March 13 deadline for return. (Doc. 81-1 ¶ 19) Plaintiffs do not allege facts showing that the delay between March 12 and the return on April 21, 2025 was unreasonable. Indeed, the judge in the civil

forfeiture action recognized that CSPD would need time to record the property's identifying information before returning it to Plaintiffs. (*See* Doc. 34-6, 2/6/2025 Hrg. Tr. at 9:14-18, 10:5-6, 11:18-19) A 39-day delay in returning the property to Plaintiffs was not of unconstitutional proportions.

### B. Plaintiffs Fail to Allege That They Were Denied Procedural Due Process (Claim 2).

Claim 2 asserts a Fourteenth Amendment procedural due process violation based on the purported absence of a prompt, neutral post-deprivation process. (Doc. 81-1 ¶¶ 38-44) Plaintiffs assert that the then-pending civil forfeiture action did not "protect[] Plaintiffs' interest in prompt compliance" with the court-ordered deadline. (Doc. 81-1 ¶ 40) "No neutral procedure existed by which Plaintiffs could obtain prompt return or a prompt determination of the lawfulness of continued retention," they allege. (*Id.*)

But in the next breath, Plaintiffs contradict their own allegations. They allege, "Plaintiffs obtained return of the currency only after court intervention …." (*Id.*) Plaintiffs thus concede that the state court forfeiture action provided process, and the state court's February 6, 2025 order provided the mechanism for return. The 39-day delay in executing the return order does not transform the seizure into one requiring a separate federal procedural remedy.

## CONCLUSION

The proposed Second Amended Complaint does not cure the deficiencies the Court identified in its June 8, 2026 Order dismissing the First Amended Complaint. Plaintiffs still fail to allege facts sufficient to establish that Colorado Springs maintained a municipal policy or custom that was the moving force behind any constitutional violation. Amendment would be futile.

The City of Colorado Springs respectfully requests that the Court deny Plaintiffs' Motion for Leave to File a Second Amended Complaint.

Respectfully submitted this 17th day of August, 2026.

OFFICE OF THE CITY ATTORNEY
Marc Smith, Acting City Attorney

*/s/ Anne H. Turner*
Anne H. Turner, Assistant City Attorney
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Phone: (719) 385-5909
Fax: (719) 385-5535
Email: anne.turner@coloradosprings.gov

*Attorneys for Defendant City of Colorado Springs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of August, 2026, I electronically filed and served the foregoing using the CM/ECF system, which will send notification of this filing to the following:

Edward C. Hopkins, Jr. - ed@rightslitigation.com
Raymond K. Bryant - raymond@rightslitigation.com
*Attorneys for Plaintiffs*

Jonathan Cooper - jcooper@rs3legal.com
Anthony E. Derwinski - aderwinski@rs3legal.com
*Attorneys for Christopher Schroder, Michael Phibbs, Daniel Hartman and Kirsten Gregg*

Nicholas C. Poppe - npoppe@ndm-law.com
*Attorney for City of Grand Junction*

L. Kathleen Chaney - kchaney@lclaw.net
Sara Hilario - shilario@lclaw.net
*Attorneys for City of Pueblo*

*/s/ Eri Howard*
Eri Howard, Legal Secretary