**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03588-GPG-KAS

TREY FRANZOY, an individual; PATRIOT CONTEST & GAMES, LLC, a Wyoming limited liability company; and CHARLIE CHEDDA'S, LLC, a Wyoming limited liability company,

Plaintiffs,

v.

CHRISTOPHER SCHRODER, in his official capacity as Director of the Colorado Division of Gaming, Colorado Department of Revenue, and in his individual capacity; MICHAEL PHIBBS, in his individual capacity; DANIEL J. HARTMAN, in his individual capacity; KIRSTEN GREGG, in her individual capacity; CITY OF GRAND JUNCTION, COLORADO; CITY OF PUEBLO, COLORADO; and CITY OF COLORADO SPRINGS, COLORADO,

Defendants.

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 15(A)**

---

Plaintiffs reply to the City of Colorado Springs's Response to Plaintiffs' Motion for Leave to File a Second Amended Complaint Under Fed. R. Civ. P. 15(a) (Doc 92, filed August 17, 2026) and to Section F of the City of Pueblo, Colorado's Response in Opposition to Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e) (Doc 93, filed August 17, 2026), which addresses this Motion. The Motion relies on the Court's granting Plaintiffs' Rule 59(e) motion (Doc 80). Plaintiffs reply now because Colorado Springs has responded on the merits and no order deferred the deadline.

Colorado Springs opposes leave on futility grounds as to Counts 1 and 2. Doc 92 at 2. Pueblo says the Motion is not "presently ripe for consideration" and preserves five points for a full response if the case is reopened. Doc 93 at 12–13. Plaintiffs address the preserved points below in case the Court reaches them. Neither defendant argues prejudice or bad faith. Under Rule 12(b)(6), the Second Amended Complaint (Doc 81-1, the "SAC") pleads a constitutional violation and the municipal policy behind it for each count.

## ARGUMENT

### I. Futility Is Measured Against the Proposed Pleading Under Rule 12(b)(6).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) (internal quotation marks omitted). That standard is "functionally equivalent" to Rule 12(b)(6). Doc 92 at 2–3; *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Colorado Springs objects only to Counts 1 and 2. Doc 92 at 11.

### II. Counts 1 and 2 Plausibly Plead a Final-Policymaker Decision.

The three gaps that the Order identified in the First Amended Complaint (the "FAC") were the Chief's involvement, delegation, and the Chief's knowledge. Doc 78 at 21. The SAC closes each gap. It pleads that City Code § 8.1.104 makes the Chief responsible "for the care and condition of . . . all other property of the Department," and that an act the Code authorizes the Chief to take "may be taken by authorized employees, assistants or designees of the Chief." SAC ¶ 24; Doc 92-1 at 1. It pleads that no ordinance constrains and no other City policymaker reviews the Chief's authority

over how his Department holds and returns property in its custody. SAC ¶¶ 25, 34. It pleads that the property retention and the three April resets were made under the Chief's authority via the evidence personnel. SAC ¶¶ 26, 29. The SAC also alleges that the Chief knew of or acquiesced in the retention. SAC ¶ 26.

**A. The pleaded policy is the Chief's unreviewed control of the Department's property-return practice.**

Colorado Springs argues that the designee clause merely lets employees "do their jobs" and that reading it as delegation would mean "every CSPD employee would be a final policymaker". It adds that the SAC's statement that subordinate discretion is not policy concedes the point. Doc 92 at 5–7 (quoting SAC ¶ 25). The SAC does not rest on any employee's discretion. It pleads that the Department's holding and return of seized property was a function featuring no meaningful constraint by others' policies, no meaningful review, and a decision "within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995); SAC ¶¶ 25, 34. The Tenth Circuit held this Chief a final policymaker for officer discipline because he "has direct management and supervision" of the Department and "any meaningful administrative review is illusory." *Flanagan v. Munger*, 890 F.2d 1557, 1568–69 (10th Cir. 1989). The function in *Flanagan* was discipline. But City Code § 8.1.104 assigns the Chief the care of the Department's property. And the SAC pleads the same absence of review for property return. SAC ¶¶ 25, 34.

**B. *Pembaur* controls a policymaker's decision carried out by subordinates.**

Colorado Springs reads *Pembaur* to require that "the Chief himself decided or directed" the delay, and treats the allegation that "the Chief of Police, or a designee acting on the Chief's behalf, made the decision" as fatal. Doc 92 at 4–5. *Pembaur* does not say that. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Policymaking authority "may be delegated by an official who possesses such authority". *Id.* at 483. The SAC alleges the release decisions were made "under the property-handling authority the ordinance assigns to the Chief of Police and exercised through the Department's evidence personnel." SAC ¶ 26. "[T]he mere exercise of discretion by an employee" is not policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988) (plurality opinion). The SAC does not plead the mere exercise of discretion. It pleads a policymaker's unreviewed practice. The Chief decides when to release seized property or when to authorize a designee to do it using the Chief's unreviewed authority. SAC ¶¶ 19, 25–26, 29.

**C. Ratification and custom are pleaded in the alternative.**

Colorado Springs says the allegation that the Chief "knew of or acquiesced in" the retention is conclusory under *Frey v. Town of Jackson*, 41 F.4th 1223, 1233 (10th Cir. 2022). It says acquiescence is not ratification. Doc 92 at 7–8. Ratification requires the policymaker to know of and approve the specific decision and its basis. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010). The SAC pleads ratification.

The return order and releases were directed to the Department the Chief commands. SAC ¶ 26. The evidence unit reset the release date three times after the court's deadline. *Id.* And no procedure let anyone except the Chief or his designees control the release. *Id.*

Regarding custom, Colorado Springs argues that Plaintiffs must show that others were similarly mistreated. Doc 92 at 9 (citing *Carney v. City & County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008), a summary-judgment decision). However, at the pleading stage, "there is no set number of similar instances of misconduct required" to plead a custom. Doc 78 at 20. Still, the SAC pleads the City's 2023 acknowledgment of the problem. SAC ¶¶ 27–28.

## III. Causation Follows From the Policymaker's Own Act.

Colorado Springs says the SAC pleads no "direct causal link" because the only factual basis for the custom theory is the Property Return Office. Doc 92 at 9. The custom theory is not the whole claim. Under *Brown*, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404–05 (1997). The "rigorous standards" Colorado Springs quotes control "when the municipal policy or practice is itself not unconstitutional," as with inadequate training, supervision, or hiring. *Waller v. City & County of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019); Doc 92 at 9. The unconstitutional practice pleaded here is holding property that a court has ordered returned until the evidence unit elects

to release it. SAC ¶¶ 40–42. Paragraph 42's allegation that the City "maintained no policy providing a prompt, neutral post-deprivation process" describes the unconstitutional practice rather than a separate failure-to-act theory. Additionally, ¶¶ 27–28 plead notice of the unconstitutional practice.

## IV. COUNTS 1 AND 2 STATE CONSTITUTIONAL VIOLATIONS ON THE PLEADING.

### A. Count 1

Colorado Springs argues that in the Tenth Circuit prolonged retention "is analyzed under the due process clause, not the Fourth Amendment," and cites *Snider v. Lincoln County Board of County Commissioners*, 313 F. App'x 85, 92–93 (10th Cir. 2008), and *Hicks v. City & County of Denver*, 2025 WL 1017679, at *4 (D. Colo. Apr. 4, 2025). Doc 92 at 10. *Snider* is unpublished and not precedential. 10th Cir. R. 32.1(A). Colorado Springs' reply acknowledges *Hicks* "noted the circuit split on this issue." Doc 64 at 7. Count 1 rests on the principle that a property seizure can be reasonable at its inception but become unreasonable when its duration outruns its justification. *United States v. Place*, 462 U.S. 696, 709–10 (1983); SAC ¶ 31. *Hicks* noted the split on whether that principle or the Due Process Clause governs continued retention. If the Court reads *Snider* to place continued retention under the Due Process Clause alone, Count 1 fails. But Count 2 pleads procedural due process on the same facts. That is consistent with the conclusion in *Snider* that holding property longer than justified, "as opposed to the initial seizure," implicates procedural due process. 313 F. App'x at 92–93. *Snider* does not make the proposed pleading futile.

**B. The "legitimate basis" in the record**

Colorado Springs says the SAC pleads only that the City "identified no lawful basis" for the delay while "a legitimate basis . . . appears in the record." Doc 92 at 10–11. Futility must be decided on the SAC. *Anderson*, 499 F.3d at 1238. A court may consider judicially noticed documents only "to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006). The SAC pleads that after the February 6, 2025, return order "Colorado Springs had no criminal charge pending against Plaintiffs and no forfeiture-based justification for continued retention." SAC ¶ 23. The court set a 35-day deadline. After hearing that the silver bars would "need to be weighed and photographed" before release, it confirmed that "it should be done in 35 days then." Doc 34-6 at 10:5–12, 11:18–21. That deadline ran March 13. The SAC pleads that CSPD, not the District Attorney, reset the release date three times in April. SAC ¶ 19. The currency and silver bars were released April 21. SAC ¶ 20. Colorado Springs says 39 days past that deadline "was not of unconstitutional proportions." Doc 92 at 11. That turns on facts the pleading does not resolve against Plaintiffs. And no justification exists for the equipment Colorado Springs still holds. SAC ¶¶ 22, 32.

**C. Count 2**

Colorado Springs argues the allegation that Plaintiffs obtained their property "only after court intervention" concedes that the forfeiture action "provided process" and the February 6 order "provided the mechanism for return." Doc 92 at 11. The SAC pleads that while the forfeiture action was pending, "the state court supplied the only

available process; once that court ordered the property returned on February 6, 2025, no process of any kind protected Plaintiffs' interest in prompt compliance." SAC ¶ 40. The concern is process for the property's return through the Department, not the courts. Officials cannot call a deprivation "unauthorized" when the State "delegated . . . the power and authority to effect the very deprivation complained of" to them. *Zinermon v. Burch*, 494 U.S. 113, 138 (1990). Post-deprivation remedies do not excuse them. The SAC pleads an established practice. SAC ¶¶ 41–42. *Culley v. Marshall*, 601 U.S. 377, 384–86 (2024), asks what process is due while property is held for a forfeiture hearing. That hearing was held here. The state court ordered the property returned, and Colorado Springs kept it anyway. SAC ¶ 23.

## V. COUNT 3 CURES THE REDRESSABILITY DEFECT AND SURVIVES PUEBLO'S PRESERVED OBJECTIONS.

### A. Redressability

Pueblo says the SAC does not allege that "any particular fraternal organization has agreed to resume hosting Plaintiffs' machines" if enforcement ends. Doc 93 at 15. That objection reaches only the host-revenue theory. The SAC pleads three other injuries Pueblo itself caused: (1) Pueblo refused to deliver device-license stickers Patriot had paid for; (2) Pueblo's letters and enforcement ended Patriot's revenue-share contracts; and (3) on April 5, 2025, Pueblo seized roughly $60,000 in machines and cash from Mr. Franzoy without charge, notice, or process. SAC ¶¶ 48, 52–53, 56. Damages for each, and return of the seized property, depend on Pueblo alone. SAC ¶¶ 57, 61. The Court applied the rule for injuries whose redress "depends upon the decision of an independent third party". Doc 78 at 24 (citing *Citizens for Constitutional*

*Integrity v. United States*, 57 F.4th 750, 761 (10th Cir. 2023)). That rule does not reach injuries Pueblo inflicted and Pueblo can repair. *Citizens for Constitutional Integrity*, 57 F.4th at 761.

**B. "Previously available" facts**

Pueblo's point that the seizure facts were known before suit concerns delay. Doc 93 at 13–14. The question is whether Plaintiffs have a good explanation for it. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206–07 (10th Cir. 2006). The FAC pleaded the April 5 search. Doc 25 ¶ 40. The Order first identified the missing ownership allegation on June 8. Doc 78 at 23. And the SAC supplied it 28 days later. Pueblo asserts no prejudice. And Patriot's standing does not depend on the seizure. SAC ¶ 56.

**C. The "lawful premise"**

Pueblo argues that the SAC still assumes the machines are lawful. Doc 93 at 16–17. The SAC pleads the opposite. "Plaintiffs' claims do not rest on the machines being lawful." SAC ¶ 14. Pueblo's reliance on *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 426–27 (1993), is misplaced. That commercial-speech case about lottery advertising does not address seizure or device licensing.

**D. The stickers**

Pueblo says the stickers "were prepared but never retrieved" and that the sticker regime was repealed in May 2024. It says the repeal moots the claim under *Citizens for Responsible Government State PAC v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000). Doc 93 at 17. The "never retrieved" account comes from Pueblo's dismissal exhibits, not the pleading. The SAC alleges that the City "refused to deliver the stickers

Patriot had purchased." SAC ¶ 48. *Citizens for Responsible Government* holds only that repeal moots prospective relief against the repealed law. Even a nominal damages claim "relates to past (not future) conduct" and survives. *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1526 (10th Cir. 1992) (emphasis omitted). Count 3's prospective relief targets the current regime, Ordinance No. 10703. SAC ¶¶ 49, 61.

**E. Rule 8**

Pueblo says several paragraphs are long and that Count 3 combines three constitutional theories: an unreasonable seizure, a prior restraint, and a deprivation of property without due process. Doc 93 at 18; SAC ¶¶ 55–61. Rule 10(b) requires separate counts "[i]f doing so would promote clarity" for claims "founded on a separate transaction or occurrence". Count 3 is one defendant's course of conduct against one operator. And each count incorporates only the shared background and that defendant's own facts. SAC ¶¶ 30, 38, 55. Rule 8(a)(2) asks for a short and plain statement. Count 3 gives the defendant, the conduct, the dates, and the injury for each theory. SAC ¶¶ 45–61.

## CONCLUSION

If the Court grants Plaintiffs' Rule 59(e) motion (Doc 80) and reopens the case, Plaintiffs respectfully request leave under Rule 15(a)(2) to file the Second Amended Complaint (Doc 81-1). If the Court reopens the case but has doubts about any count, Plaintiffs ask that it set the full briefing Pueblo has requested before ruling on futility. Doc 93 at 13.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr., Bar No. 43298
Raymond K. Bryant, Bar No. 42586
Civil Rights Litigation Group, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(720) 515-6165
ed@rightslitigation.com
raymond@rightslitigation.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.